Green, Judge,
delivered the opinion of the court:
The plaintiff, who is the trustee of the Independent Coal Corporation, a bankrupt, brings this suit to recover the balance due on a sale by the bankrupt corporation to defendant of a quantity of coal for the use of the Navy Department, which plaintiff alleges to have been of the value of $67,304.30, *400 and which amount the plaintiff alleges the defendant through the Navy Department agreed to pay therefor. Plaintiff’ further alleges that the corporation received from defendant $15,785.75 as payment thereon. Plaintiff therefore asks, judgment for the balance alleged to be due and unpaid,, to wit, $51,518.55.
The defendant admits that the Independent Coal Corporation, of which the plaintiff is trustee in bankruptcy, delivered to it coal as alleged in plaintiff’s petition but says that the delivery was made pursuant to a written contract under which plaintiff was to deliver an estimated amount of 150,000’ gross tons at the price of $4.43 per long ton to be delivered on call as required during the year ending June 30, 1926; that under this contract, the said corporation delivered approximately 41,147 tons, which were worth at the contract price the sum of $182,284.18, after certain deductions had: been made in accordance with the terms of the contract. Of this amount, $136,770.78 was paid the contractor. On October 2,1925, the defendant made a call on said corporation to-furnish a certain quantity of coal on October 15, 1925, as provided by the contract, but said coal corporation failed to-deliver said coal and the defendant, after notice to said corporation, bought the required coal thus called for in the open market at the best obtainable price for the account of' the Independent Coal Corporation. Thereafter and during the life of this contract, and after due notice to the Independent Coal Corporation, the balance of the coal covered by said: contract, but which the Independent Coal Corporation failed, and neglected to deliver, was purchased by defendant in the-open market at the best obtainable price, in all cases resulting in a loss to defendant as said coal had to be bought at: prices above the contract price, such losses amounting in all to the sum of $41,156.86, and after crediting thereon the-amount which was unpaid on the consignment of coal delivered, the remaining balance due defendant was $4,219.03.. The defendant therefore asks judgment on its counterclaim for the amount last mentioned.
The evidence shows without dispute that a contract was-entered into between the coal corporation and the Navy De *401 partment for the delivery of-a quantity of coal estimated at 150,000 tons at the price of $4.43 per ton. It will be observed that the plaintiff does not plead this contract but merely alleges that defendant agreed to pay a certain price for the coal delivered and seeks to recover what it alleges was the agreed price of the coal admitted to be delivered, less payments thereon. Defendant relies upon the contract, in substance alleges it was breached, and seeks to recover the amount by which the damages alleged to have been thereby sustained exceed the price of the coal received under the-contract. These matters constitute the issues in the case.
Under these issues the case’ turns upon the construction of the contract which had been executed between plaintiff and defendant with reference to the purchase of coal. Plaintiff insists that this contract is what is known as a “ wish, want, or will ” contract, that is, a contract under which the defendant was not obliged to take any specified quantity of coal. The defendant, on the other hand, contends that the contract bound the coal corporation to furnish the amount of coal actually required by defendant at Hampton Eoads Naval Station, and that this amount could be ascertained and made definite. If plaintiff is correct in its contention as to the nature of the contract it would be unenforceable, and we think for reasons hereinafter stated that the defendant, would be liable for the coal delivered at the price agreed upon in the contract, but in such event it is obvious that defendant can not recover on its claim for damages alleged to have been sustained by reason of breach of the contract.. On the other hand, if the contract is enforceable as to both parties, the plaintiff would be liable in damages if it breached the contract and the amount' of damages is shown by the evidence.
A wish, want, or will contract is not enforceable because of lack of mutuality. If the contract merely binds one party to furnish whatever the other party may desire with respect, to certain articles, one is bound and the other is not, and no enforceable contract results. On the other hand, if one party agrees to furnish and the other to take whatever the latter may need or require for a certain purpose and these *402 needs or requirements can be definitely ascertained, such a contract is binding and enforceable. Under these rales, with the aid of the decisions in particular cases, it is necessary to examine the language of the contract involved in the case at bar.
Much is said in argument with reference to the provisions in the bid in connection with the statements contained in the written award of the contract to the plaintiff by defendant. We think all of these matters were merged in the written contract which was subsequently entered into. This contract, in the specifications thereto attached, among other things, provided:
“ Due to uncertainty concerning movements and the extent of activities of naval vessels, it must be distinctly understood that the quantity of coal specified in any contract entered into under this schedule will be tentative only, and purchase of a definite quantity is not guaranteed. Contractors will be expected to furnish such quantity of coal as will be actually required for naval purposes during the period covered by the contract, which may be greater or less than the estimated quantity stated.”
The contract in this case is very similar to the one passed upon by the Supreme Court in Willard, Sutherland & Company v. United States, 262 U. S. 489, 493. In that case the bid and contract provided:
“ It shall be distinctly understood and agreed that * * * the contractor will furnish and deliver any quantity of the coal specified which may be needed * * * irrespective of the quantities stated, the Government not being obligated to order any specific quantity * * *,” and that the stated quantities “ are estimated only and are not to be considered as having any bearing upon the quantity which the Government may order under the contract.” (Supreme Court’s italics.)
The wording is not the same in the instant case, but we see no difference between the effect of the words “ purchase of a definite quantity is not guaranteed ” and the language used in the Willard Co. case, supra, namely, “the Government not being obligated to order any specific quantity.” In the instant case the language is, “ contractors will be expected to furnish such quantity of coal as will be actually *403 required ”; in the Willard Go. case the language was, “ it shall be distinctly understood and agreed that * * * the contractor will furnish and deliver any quantity of the coal specified which may be needed.” In the case at bar the contract provided that the quantity actually required “ may be greater or less than the estimated quantity stated ”; in the Willard Co. case the contract recited that the stated quantities “ are estimated only and are not to be considered as having any bearing upon the quantity which the Government may order under the contract.”
The contract in the Willard Co. case was held unenforceable for the reason that there was nothing therein which required the Government to take, or limited its demand, to any ascertainable quantity. Citing Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, and other cases.
In the Willard Co. case the test was whether the Government was required to take any ascertainable quantity, and this, we think, is the test in all of this class of cases. In the instant case, unless the Government was bound to take a specified amount, or an amount that could be definitely ascertained, there was no mutuality, and the contract can not be enforced. The question that here arises we think is settled by the statement in the contract between the parties as follows:
“ * * * it must be distinctly understood that the quantity of coal specified in any contract entered into under this schedule will be tentative only and purchase of a definite quantity is not guaranteed.”
If this statement means what it says, we are unable to see how the Government was hound to take any definite quantity, since it was distinctly understood that the purchase thereof was not guaranteed. True it was said in the same clause that the contractor would “be expected to furnish such quantity of coal as will be actually required,” but in the Willard Co. case it was “ distinctly understood and agreed that * * * the contractor will furnish and deliver any quantity of the coal specified which may be needed.” We think “ needed ” is fully as' strong as “ actually required.” Moreover, the question is not whether the *404 contract bound the plaintiff to deliver such a quantity as was “ actually required ” for that may be conceded. The question upon which the enforceability of the contract turns, was whether the Government was obliged to take what it “ actually required,” or whether it was “ distinctly understood ” that the “ purchase of a definite quantity is not guaranteed.” This clause must be given some meaning. If it be argued that it simply means that at the time of the contract the quantity of coal could not be made definite, the answer is that this matter was entirely covered by the specifications attached to the contract, which show that at the time of the execution of the contract the quantity of coal to be delivered was “ estimated ” at 150,000 gross tons. Except for the purpose of making it clear that the Government did not agree to take any definite amount, the statement that “ the purchase of a definite quantity is not guaranteed ” had no place in the contract. In this connection it should be noted that there is nothing stated in either the bid or the award which was a part thereof which bound defendant to take any quantity of coal whatever. If there had been merely a bid to furnish a certain quantity of coal at a certain price, the acceptance of the bid or the award of the contract would imply an agreement to pay for the same and this would also be true even though the quantity was not definitely fixed but was ascertainable. But any such implications must arise from the circumstances of the bid and the contract to which in all cases we must look before determining what may be implied therefrom. When in this case we examine the bid made upon the form required by defendant, the language contained therein, we think, forbids the implication. Moreover, the award was “ For steaming coal as ordered,” without any reference to the quantity. We think that the Willard-Sutherland case is controlling and that the contract is unenforceable.
Having held that the contract is unenforceable, it follows that defendant can not recover on its counterclaim for the alleged breach thereof by plaintiff in failing to make further deliveries of coal. In any event, even if the contract was held to be enforceable defendant has neither alleged nor proved that it actually required any coal further than that *405 which was delivered. The evidence is a blank on defendant’s actual ” requirements for coal at Hampton Roads.
There remains only the question of the amount of plaintiff’s recovery. The rule in cases like the one at bar, as stated in the Willard Co. case, supra, is that—
“ While the contract at its inception was not enforceable, it became valid and binding to the extent that it was performed.”
The coal corporation delivered to the defendant a total of 41,147 long tons and 1,520 pounds of steaming coal, which, at the price of $4.43 a long ton specified in the contract, amounted to $182,284.18. The Government paid the coal corporation the sum of $136,770.78, leaving a balance at the contract price of $45,513.40. The defendant claims that $8,575.57. should be deducted from this amount on account of tests made as to ash content, but the evidence merely shows that such a deduction was made upon this claim. This does not prove that any tests were ever made or that the coal in fact did not comply with the contract.
Perhaps reference should here be made to the fact that the defendant filed a motion to set aside the submission of the case, reopen it, and permit the taking of additional evidence with reference to the requirements of the Navy at Hampton Roads and tests made of the coal furnished. This motion was overruled. It was not filed until after the case was submitted and the report of the commissioner on the facts had been made, and no reason was given for such delay. Defendant’s counsel was apprised of the situation by the argument when the case was submitted. The case was then remanded to a commissioner for findings, but defendant did not then ask leave to take further evidence, but waited until the findings were made reciting that there was no evidence on the matters as to which defendant subsequently sought by its motion to take testimony. In the interest of fairness and in justice to the litigants in a case, this court is disposed to grant further opportunity to attorneys who have through accident or surprise or by reason of some unforeseen circumstances failed to present evidence which they might have produced. But such an application should be timely, and *406 where it is delayed until after the report of the commissioner and the submission of the case some reason should be given for the delay in order to entitle it to consideration. In this case no such reason was given, and if motions to introduce additional evidence were allowed under such circumstances, it is obvious that the court would never be able to complete its business.
Upon the evidence plaintiff is entitled to recover the balance unpaid upon the coal delivered according to the contract price, which, as before stated, is $45,513.40. Judgment will be entered accordingly.
Williams, Judge; Littleton, Judge; Graham, Judge; and Booth, Chief Justice, concur.