Whaley, Chief Justice,
delivered the opinion of the court:
Plaintiff brings this suit to recover an alleged balance due on a contract into which it entered with the defendant on January 2,1934, whereby it agreed to furnish—
all labor and materials, and perform all work required for one duplicate cast from master models of lighting fixtures, Types B-3, B-4, LL-3, PP-3, B-3, V-3, K-4, O, EE-3, S-4, HH-3, and TT (owned by the Government) now stored, as described in the specifications hereinafter mentioned, which shall be taken over and stored by the contractor, and full responsibility assumed for same from time of completion until June 30, 1936, so that orders may be made from time to time as needed for said duplicate models, at the unit prices named by the contractor in proposal dated June 28, 1933, for the consideration of seven thousand forty-nine dollars ($7,049.00), in strict accordance with the specifications, schedules, and drawings, all of which are made a part hereof and designated as follows: Specification for plaster models, etc., for exterior lighting fixtures for Federal Buildings, dated June 7, 1933, schedule therein, and drawings Nos. 2, 3, 12, 16, 19, 20, 31, 34, 38, 42, 46, 23 (said drawings being on file in the Office of the Supervising Architect, Treasury Department), insofar as they apply to the work covered by this contract.
The work shall be commenced as soon as practicable after the' date of receipt of notice to proceed, the duplicate cast of each master model shall be completed and shipped or otherwise delivered as directed within ten (10) calendar days from the date of receipt of notice to proceed with each duplicate ordered. [Italics ours.]
*91 The plaintiff in its response to the advertisement for bids set out the unit price for which it would make the casts from the master models as provided for in the specifications for bids. The specifications also provided for the work to commence as soon as practicable after the date of notice to proceed. The total of the unit prices amounted to the sum mentioned as the consideration in the contract.
On May 25, 1934, the defendant gave plaintiff formal notice to proceed with seven of the duplicate casts and the plaintiff complied with this order and furnished one duplicate cast of each of the types mentioned in the order. Defendant paid plaintiff $3,589.00 which was the total to which the unit prices of each cast, as ordered, amounted.
The defendant did not order the plaintiff to proceed with the making of any other, casts from the master models. However, plaintiff, when it entered into this contract, anticipated the supposed needs of the Government and manufactured of its own accord, without any orders to proceed, a cast of each of the twelve master models.
The contract ran out according to its terms on July 1,1936, and plaintiff found on its hands the five casts which it had manufactured and which had not been ordered by the Government.
It is contended by the plaintiff that, under the terms of the contract, the Government was in duty bound to order a cast made from each of the master models and that, therefore, the defendant is liable for the five casts which remained on its hands at the expiration of the contract.
This brings us to the consideration of the construction of the contract. Although the terms may be somewhat dubious, still the advertisement for bids and the specifications duly notified the plaintiff that the defendant would furnish the master models and from these master models the plaintiff was to make such plaster casts as the Government might from time to time order. Bids were asked for a unit price on each model and it was definitely stated and clearly known to the plaintiff, from his previous dealings with the Government under like contracts, that only those casts which plaintiff was ordered to proceed to make from the master models *92 were to be made and that it was necessary first for the Government to issue a notice to proceed. The contract distinctly .states that the master models shall be stored and the contractor shall be responsible for their storage “so that orders may be made from time to time as needed * * * at the unit prices named by the contractor in proposal dated June 28, 1933.”
Under the terms of this contract the defendant was not obligated to order any of the casts to be made. It could order any number and would only be obligated to pay for each cast ordered according to the unit price named in the specifications and bid. There was no obligation on the part of the defendant, under the terms of this contract, to pay for any more than it ordered and its orders were limited to the needs of the Government.
Although it is not mentioned in the briefs, this contract falls under the heading of a “wish, want, or will” contract and is not enforceable because of lack of mutuality.
In Updike, Trustee v. United States, 69 C. Cls. 394, 401, in defining a “wish, want, or will” contract, the court said:
A wish, want, or will contract is not enforceable because of lack of mutuality. If the contract merely binds one party to furnish whatever the other party may desire with respect to certain articles, one is bound and the other is not, and no enforceable contract results. On the other hand, if one party agrees to furnish and the other to take whatever the latter may need or require for a certain purpose and these needs or requirements can be definitely ascertained, such a contract is binding and enforceable.
See cases cited.
However, the plaintiff has furnished seven models to the Government and the defendant has paid plaintiff according to the unit prices mentioned in the contract, and there is no further obligation on the part of the defendant to pay for anything else.
The plaintiff is not entitled to recover and its petition is therefore dismissed. It is so ordered.
Littleton, Judge; and Green, Judge, concur.
Whitaker, Judge, took no part in the decision of this case.