## WILLARD, SUTHERLAND & COMPANY *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 209.   Argued May 1, 2, 1923.—Decided June 4, 1923.

1. A contract for the purchase of coal by the Government at a stated price per ton which does not require the Government to take, or limit its demand to, any ascertainable quantity, is unenforceable, for lack of consideration and mutuality.  P. 492.

2. Such a contract, however, becomes valid and binding to the extent to which it is performed, and a party who, abandoning an earlier protest, voluntarily delivers coal under the contract, is limited to the contract price, and cannot recover more from the United States.  P. 494.

56 Ct. Clms. 413, affirmed.

APPEAL from a judgment of the Court of Claims, denying the appellant's claim for the difference between the market price of coal furnished the Navy and the price stated in a contract.

*Mr. Thomas Renaud Rutter* and *Mr. Gibbs L. Baker,* with whom *Mr. Karl Knox Gartner, Mr. John A. Selby* and *Mr. Clarence A. Miller* were on the brief, for appellant.

*Mr. Rufus S. Day,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This suit was brought to recover $3,650, being $3.65 per ton for 1,000 tons of coal furnished the Navy.   Appellant

claims that it is entitled to the market price at the time of delivery, $6.50 per ton. The United States claims that appellant was bound by contract to furnish it for $2.85 per ton. The Court of Claims made findings of fact, and concluded that appellant was not entitled to recover.

In the spring of 1916, the Navy Department, being desirous of making contracts for coal for the ensuing fiscal year ending June 30, 1917, issued its invitation for bids in the form of a schedule containing general specifications and conditions and printed forms of proposals for deliveries in stated quantities at ten different ports or stations. Included therein was a form of proposal for the furnishing of 600,000 tons of coal to be delivered at Hampton Roads, Va. On one of these forms, appellant submitted its bid for coal of the kind and quality described: " to be delivered . . . at such times and in such quantities as may be required during the fiscal year ending June 30, 1917 . . . 10,000 tons steaming coal . . . for delivery . . . Hampton Roads, Va., per ton, $2.85 . . . $28,500."

The general specifications printed on the form contained the following provisions:

" Quantities Estimated "—" It shall be distinctly understood and agreed that it is the intention of the contract that the contractor shall furnish and deliver any quantity of the coal specified which may be needed for the naval service at the places named during the period from July 1, 1916, to June 30, 1917, irrespective of the estimated quantities stated, the Government not being obligated to order any specific quantity. The estimated quantities have been arrived at from records of previous purchases. While they represent the best information obtainable as to the quantities which will be required . . . they are estimated only, and are not to be considered as having any bearing upon the quantity which the Government may order under the contract."

" Deliveries "—" Deliveries to be made promptly, and in lots or quantities specified . . . on call and at the prices accepted by the Department, . . ."

" Reservations "—" The Government reserves the right to reject any or all bids and in accepting any bids . . . the right is also reserved to make such distribution of tonnage among the different bidders for suitable and acceptable coals for the naval service as will be considered to be for the best interests of the Government."

" Notes "—" Bids on less than the entire quantity of coal specified under each class will be received and considered. Such partial bids must state the amount of tonnage it is proposed to furnish, subject to the other conditions of these specifications."

Appellant was notified of the acceptance of its proposal, and on June 5, 1916, a contract was made containing the portions of the bid and specifications above referred to.

March 26, 1917, appellant was informed by the Department that the quantity estimated in its contract would be exceeded by ten per cent. Appellant answered that when it had furnished 10,000 tons, it would consider its obligation under the contract discharged, and that it was prepared to furnish the balance. The Department cited the provisions of the contract as authority for requiring the additional tonnage; stated that the same requirement was made of other contractors, and expressed the hope that it would not be necessary to resort to extreme measures to accomplish compliance. Later the Department informed appellant that the steamer Kennebec had been directed to coal with it, and that the quantity required was 2,180 tons. Appellant answered that the balance due under the contract was 560 tons, which it was ready to supply at any time, and that this amount was all that it was able to furnish. The Department insisted that the full cargo assigned to the Kennebec must be furnished.

Appellant reiterated its position. June 9, the Department advised appellant that failure to supply the tonnage ordered would necessitate immediate purchase in the open market for its account. June 12, appellant replied that it had arranged to supply the Kennebec the full quantity required, and that it was " doing this under protest which can be straightened out later." June 14, appellant wrote that it would agree to supply the 2,180 tons ordered, with the understanding that no further assignments would be made to it; that this was 1,620 tons more than it was obligated to deliver; that this excess would be furnished under protest, reserving the right to take the proper steps to recover the difference between the current market price and the contract price; it asked confirmation from the Department and stated that on receipt thereof it would furnish the coal.

June 15, the Department acknowledged appellant's letter of the 14th, but, as found by the Court of Claims, " not acceding to any proposition therein contained," directed appellant:

" Your company will please supply Kennebec with fifteen hundred sixty tons coal, or such quantity as may be necessary to bring the total tonnage delivered by you under contract twenty-six four ninety-two up to total estimated quantity plus ten per cent, or total eleven thousand tons. Balance Kennebec cargo will be obtained elsewhere."

1. The language of the contract indicates that the parties intended and understood that, depending on its own choice, the Department might call for more or less than 10,000 tons of coal. The forms of bid indicated a purpose to contract in advance for the year's supply and not to buy coal in the open market; they informed bidders that the stated quantities were estimated on the basis of previous purchases and were not to be taken as exact figures, and such forms were suitable to enable the De-

partment to award one contract for the total estimated quantity or to distribute its requirements among a number of producers as it might determine. Appellant's bid mentioned specifically 10,000 tons, (which was only one-sixtieth of the estimated total for Hampton Roads). It provided that, " It shall be distinctly understood and agreed that . . . the contractor will furnish and deliver any quantity of the coal specified [i. e., of the kind and quality specified] which may be needed . . . irrespective of the quantities stated, *the Government not being obligated to order any specific quantity* . . . "; and that the stated quantities " are estimated only, and are not to be considered as having *any bearing* upon the quantity which the Government may order under the contract . . . The right is also reserved to make such distribution of tonnage among the different bidders . . . as will be considered for the best interests of the Government."

There is nothing in the writing which required the Government to take, or limited its demand, to any ascertainable quantity. It must be held that, for lack of consideration and mutuality, the contract was not enforceable. *Cold Blast Transportation Co.* v. *Kansas City Bolt & Nut Co.,* 114 Fed. 77, 81; *Fitzgerald* v. *First National Bank, id.* 474, 478; *A. Santaella & Co.* v. *Otto F. Lange Co.,* 155 Fed. 719, 721, *et seq.; Golden Cycle Mining Co.* v. *Rapson Coal Mining Co.,* 188 Fed. 179, 182, 183.

*United States* v. *Purcell Envelope Co.,* 249 U. S. 313, is not inconsistent with the conclusion that the contract here was not enforceable. There, the making and acceptance of the bid consummated the contract, and it was construed to bind the company to furnish and the Department to take the envelopes and wrappers specified which the Department would need during the period covered by the contract.

2. While the contract at its inception was not enforceable, it became valid and binding to the extent that it was performed. *St. Louis Hay & Grain Co.* v. *United States,* 191 U. S. 159, 163; *Hartman* v. *Butterfield Lumber Co.,* 199 U. S. 335, 338; *United States* v. *Andrews & Co.,* 207 U. S. 229, 243.

There was no duress or compulsory taking. The last order was given, as prior orders had been given, with reference to the contract. The failure of the Department in the correspondence directly to decline the proposal made by appellant in its letter of June 14 has no significance in favor of appellant. The Department did not accept or in any manner acquiesce. Immediately its order was given for 1,560 tons, making a total of 11,000 tons, the exact amount it claimed it was entitled to call for under the contract. The correspondence shows that the Department declined to accept appellant's view and refused to entertain its requests or proposals to leave the matter of price open. Appellant failed further to object and delivered the coal. It is not important whether it was persuaded that the Department's interpretation of the writing was correct or, to avoid controversy, decided to fill the order. Its earlier protest is of no avail (see *Savage* v. *United States,* 92 U. S. 382), and it must be held voluntarily to have accepted the order for the additional 1,000 tons, and to have furnished it at the price specified in the contract. *Charles Nelson Co.* v. *United States,* 261 U. S. 17. By the conduct and performance of the parties, the contract was made definite and binding as to the 11,000 tons ordered and delivered according to its terms.[1]

*The judgment of the Court of Claims is affirmed.*

---

[1] See *Insurance Co.* v. *Dutcher,* 95 U. S. 269, 273; *Topliff* v. *Topliff,* 122 U. S. 121, 131; *Old Colony Trust Co.* v. *Omaha,* 230 U. S. 100, 118; *Nelson* v. *Ohio Cultivator Co.,* 188 Fed. 620, 623; *Bunday* v. *Huntington,* 224 Fed. 847, 854; *Bransford* v. *Regal Shoe Co.,* 237 Fed. 67, 69.