### AMERICAN BRAKE SHOE & FOUNDRY CO. v. NEW YORK RYS. CO.

### In re EIGHTH AVE. R. CO.

(Circuit Court of Appeals, Second Circuit. December 2, 1924.)

No. 79.

Street railroads ⬤⟞58—Receiver of purchaser of street railway property on foreclosure held not entitled to retain proceeds of fire insurance policy.

Where street railway property, leased under agreement requiring insurance to be carried in favor of lessor, who was obligated to use proceeds of insurance in rebuilding, was destroyed by fire, but insurance fund was deposited in special account under agreement of all parties interested and only partly used in rebuilding, and lessee's property and leasehold was sold under mortgage foreclosure *held*, that receiver of purchaser which also owned substantially all claims against lessee, after termination of lease at direction of court, was not entitled to retain such fund as against lessor, nor entitled to deduct cost of improvements placed on property.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the American Brake Shoe & Foundry Company against the New York

Railways Company. On application of the Eighth Avenue Railroad Company, as owner and lessor of certain railroad properties in possession of Job E. Hedges, receiver of defendant, appointed in such suit, for payment to it of fund held by receiver. From an order denying application (291 F. 107), the Eighth Avenue Railroad Company appeals. Order reversed.

Michel Kirtland, of New York City, for appellant.

Cotton & Franklin, of New York City (Thurlow M. Gordon, of New York City, of counsel), for appellee Sheeran.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. On November 23, 1895, the Eighth Avenue Railroad Company leased its railroad and other property including a parcel of real estate upon which there was a car barn on West side of Eighth avenue, between Forty-Ninth and Fiftieth street, in New York City, to the Metropolitan Railway Company for a period of 99 years. This lease provided for insurance against fire, which was payable to the lessor in the event of loss. The lessee went into possession and within a few years thereafter changed the motive power from horses to underground electricity, and later leased its entire system of railroads, including the property in question to the New York City Railways Company. This latter company and the Metropolitan Company went into receivership in 1907. In July, 1900, the Metropolitan Street Railway Company leased the southerly half of the car barn to the New York Electric Vehicle Transportation Company for a term of 25 years, with the privilege of cancellation after September 1, 1910, on two years' notice. On January 28, 1907, a fire occurred on the Forty-Ninth street side and destroyed a portion of the building leased to the New York Transportation Company, the damaged area being about 300 feet by 94 feet. Thereafter the New York Transportation Company roofed over one story. The second and third stories which were burned were never rebuilt. The insurance under the terms of the lease was carried for the account of the Eighth Avenue Railroad Company, and later with the Guaranty Trust Company as trustee, under a mortgage, as their interest may appear. The lease provided that in case of fire loss, all insurance moneys received by the lessor should be applied to "restoring, rebuilding or otherwise

improving the leased property." The loss occurring from this fire was adjusted at $71,437, and this amount was collected and deposited in a special fund. On July 27, 1907, the five parties interested entered into an agreement reciting that each had certain rights and interest in and to the proceeds of the insurance. It was agreed that the Guaranty Trust Company as depository should hold the proceeds of the insurance, investing or reinvesting the same and to pay out the proceeds or any part thereof upon the joint written order of the Metropolitan Street Railway Company and its two mortgagees. Each mortgage included the leasehold interest of the Metropolitan Street Railway Company. The Eighth Avenue Railroad had issued no mortgage on its property. Between August 20, 1908, and May 20, 1909, there was withdrawn from said deposit on certificate of the receivers of the Metropolitan Street Railway Company, supported by affidavits, expenditures made in restoring, rebuilding, and otherwise improving said property, in the aggregate sum of $25,022.14, leaving a balance of $46,402.41 on which interest was allowed from time to time, and which remained in this fund. By an order of the District Court on July 15, 1919, the appellee was directed not to adopt the lease of the Eighth Avenue Railroad Company to the Metropolitan Street Railway Company and to return and deliver to the Eighth Avenue Railroad Company at midnight July 31, 1919, all of its real property, railroad, and certain other property therein mentioned; but certain questions were left for future determination. This fund was held as a special deposit by the appellee, and it is the contention of the appellant that it should have been returned to it pursuant to the provisions of the aforesaid lease and the order of the court. The failure to pay over the fund resulted in the present petition, which was denied, and an order entered thereon.

It was held below that the New York Railways Company acquired the interest of the lessee (Metropolitan Railway Company) in the Eighth avenue lease, the court stating that the records show that it was sold in the foreclosure sale of the Metropolitan mortgages, but retained by the Metropolitan receivers, and that the New York Railways Company have acquired substantially all of the bonds of the Metropolitan Company and substantially all tort and general claims against said company, and as such creditor of the Metropolitan Company in 1916 acquired this fund. The obligations of the five-

party agreement referred to were: The depository (Guaranty Trust Company) to collect and hold all the proceeds of said insurance on all of the buildings and that it should pay out of these said proceeds, or any part thereof, the moneys upon the joint written order of the parties of the second (Metropolitan Street Railway Company), fourth (Guaranty Trust Company), and fifth (Guaranty Trust Company) parts. There is nothing contained in this agreement which in any way conflicts with the terms of the Eighth avenue lease. Under the lease, the insurance money, after the expenditure of such as was used in rebuilding, was payable to the lessor. The title and ownership of the moneys subject to this cost of rebuilding was in the appellant. In only one way could the leasing railways use these moneys, and that, the use thereof for rebuilding the destroyed premises. The interest of the New York City Railway Company was as subtenant, and its position was merely to see that the moneys were so applied. The Metropolitan Street Railway Company was the tenant of the appellant, and when it leased to the New York Railways Company, this leasehold interest was included in the two mortgages of the Guaranty Trust Company and the Morton Trust Company. It was the duty of each mortgagee to see that the insurance moneys were applied as provided under the lease, and until so applied held as a special fund as an incident to the real property which had been destroyed.

The right of all parties was protected by the five-party agreement of June 27, 1907; the interest of each was recited therein. Provision was made for its collection by one of the parties as depository and as trustee under the mortgage, and withdrawal was provided for on the order of the Metropolitan Company and the two mortgagees. To use the moneys otherwise than as thus agreed upon would be tantamount to a conversion thereof. The fact that the New York City Railway Company and the Metropolitan Companies went into receivership and the insurance moneys came to the receivers appointed by the District Court does not alter the situation. The receivers assumed the burden of these companies. They did apply a portion of the moneys for rebuilding and were reimbursed by receivers' certificates which were issued upon proper affidavits showing that the purpose of the withdrawal of the money was for "restoring, rebuilding and otherwise improving" the property during the period stated in the affidavits. These receivers had possession and operated the railroads for four years. It appears that their accounts were approved in March, 1916, and the balance then on deposit in this special fund was delivered to the New York Railways Company, and remained with it until the present receiver, the appellee, was appointed. This receiver did not expend any part of this special fund. He was entitled to interest thereon as long as the rental was paid, under the lease, to the Eighth Avenue Railroad Company. After the appellee became receiver, on March 22, 1916, this fund of $46,402.41 was transferred to him. On August 3, 1920, he withdrew $17,316.89 representing the interest on the fund to December 31, 1919, and in December, 1920, under the direction of a letter by counsel for the appellant, he withdrew the principal and some remaining interest without prejudice to the rights of the parties; the total of the three sums withdrawn being $66,217.12. The appellant was entitled to the fund of $46,-412.41 and the interest allowed thereon from October 1, 1918 (which was the date the last rental was paid) and received by the appellee amounting to $2,497.82, making a total of $48,900.23.

These withdrawals of the funds as made were pursuant to the agreement of June 27, 1907. At no time was the New York Railways Company at liberty to mingle this money with its own funds. The deposit of the moneys in a special fund was for the benefit of all five parties to the agreement, and at no time did either party thereto release or relinquish any of its rights to the moneys so deposited. After the expenditure of a part thereof for restoring, rebuilding, and improving the destroyed portion of the building, the unexpended balance could not have been included in the foreclosure sale under the Metropolitan mortgages in 1911. All that was sold at that time was the tenants' rights under the lease, for that is all that was mortgaged. All the work of restoring and rebuilding the property seems to have been done in conformity with the terms of the lease, and the unexpended balance, for reasons sufficient to the parties, was not used in rebuilding purposes.

We do not regard the agreement of June 27, 1907, in any respect ambiguous, and if we are to judge the intention of the parties by their course of conduct and what subsequently transpired, we think their acts were in conformity with these conclusions. This practical interpretation of this agreement by the parties is helpful in arriving at the conclusions we here announce. Insurance Co. v. Dutcher, 95 U. S. 269–273, 24 L. Ed. 410;

Old Colony Trust Co. v. Omaha, 230 U. S. 118, 33 S. Ct. 967, 57 L. Ed. 1410; Willard v. U. S., 262 U. S. 494, 43 S. Ct. 592, 67 L. Ed. 1086.

Since the mortgagees under the Metropolitan mortgages acquired no lien on these funds through the mortgage foreclosure sale, they could pass no interest or title thereon to the New York Railways Company; nor did the latter company acquire the fund as a creditor of the Metropolitan Street Railway Company, and this for the reason that at no time did the Metropolitan Railway Company require any interest in the insurance moneys except for the purpose of rebuilding after the fire. When withdrawals were made from the fund in restoring the real property, it was a return from real property to real property, and the balance unexpended at all times had all of the incidents of real property. At no time did the appellant release any rights therein.

It is admitted by the appellee that the New York Railways Company did not expend the balance of the money originally constituting the fund for the purpose of restoring or rebuilding. We find nothing in the record justifying the claim that this fund in question was the property of the Metropolitan Railway Company or that it attempted to sell it as its property. It passed through the receivership as part of the leasehold property. When the lease of November 23, 1895, was terminated by the order of the court on July 31, 1919, the appellee ceased to have any interest in this special fund, and it should then have been returned to the appellant with its other real estate.

It is contended by the appellee that when the appellant got back this property, it was of greater value than when it was turned over to the possession of the Metropolitan Street Railway Company because of certain improvements which were made thereon by the New York Transportation Company. This subtenant was not required to make improvements of any kind, but was given the right to make, at its own expense, any reasonable alterations, additions, or improvements required to properly fit the premises for its business. It did make improvements, but never made any claim therefor. The lease of November 23, 1895, provides that all improvements of any kind on the property belonged to the appellant. The expenditures made by the Metropolitan Railway Company and its receiver were in no way for rebuilding that part which was destroyed by fire. These expenditures were apparently made for its business necessities. The

money so expended could not be deducted from the fund in question.

The petition of the appellant should have been granted. Order reversed, with costs.

LEARNED HAND, District Judge (concurring). I agree that the contract of June 27, 1907, did not change the rights of the parties to the fund, but merely gave control over it to the mortgagees and the lessee so that the fund might be disbursed at their discretion. That must, however, be done with due regard to the rights of all concerned, and we should look to what those rights were. In the lease of the premises by the Eighth Avenue Company, "the lessor agrees that in case of loss all insurance moneys payable to or received by it shall be applied to the restoring, rebuilding or otherwise improving the leased property." This gave the lessee and its successors the right to insist upon the application of any such moneys to that purpose; the lessor was not free to withdraw them during the period of the lease; on the contrary, it was bound to use them on the premises unless the lessee consented to release them. If the lessee did the repairs, it got the right of reimbursement out of the fund pro tanto, having discharged the lessor's obligation and not being by virtue of its interest under the lease a mere volunteer.

The lien so arising extended, however, only to the lessee's advances upon the buildings actually damaged, and even then only in so far as the lessee restored these to their former condition. For instance, the lessee got no lien for the expense of changing the building on plot 1 B into a five-story building or of rebuilding that on plot 1 C. It did get a lien upon so much of the fund as was paid by the insurance companies for damage to 1 B because rebuilding was also restoring. But any additional stories it put on this building was a voluntary payment not chargeable to the lessor. Similarly of plot 1 C. As to plot 1 A, the parties agreed to change its character. The lien there should extend only to so much as was put on the plot to restore it to the condition which was agreeable to the lessee. The balance should go to the lessor, because the lessee released his right during the term to the use of the original building by accepting a lower one. The lessee's contention that it may bring all its payments into hotchpot is unfounded.

The lessor urges that the lessee should not be allowed to assert any rights arising from advances made by the sublessee of plot 1 C.

This would depend upon whether these were made voluntarily by the sublessee, or whether under agreement with the lessee by which the sublessee could eventually charge them on the lessee's account. If they were the first, they were in effect advances by the lessee; if the second, the lessee may not claim subrogation to payments which it did not make. The record is not clear about this, and the fact would have had to be ascertained if my views had prevailed.

Therefore, although I agree that the order should be reversed, I think that the lessee was probably entitled to a substantial sum, and that the cause should be sent back to ascertain how much.