**BEL PRE HEALTH CARE CENTER, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 528–89C.**

United States Claims Court.

Nov. 22, 1991.

Charles Frederick Chester, Rockville, Md., atty. of record, for plaintiff.

John Warshawsky, with whom were Asst. Director Jeanne E. Davidson, Director David M. Cohen, and Asst. Atty. Gen. Stuart M. Gerson, Dept. of Justice, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

### I

In the period in suit (1987–1988) plaintiff, Bel Pre Health Care Center, Inc., operated a nursing care facility licensed by the State of Maryland. For a number of years preceding the commencement of this action, plaintiff provided nursing care services to disabled veterans pursuant to annual contracts for that purpose entered into with the Veterans Administration (renamed "Department of Veterans Affairs" in 1989). On average, thirty percent of the facility's residents (30 individuals) were veterans placed there pursuant to a Veterans Administration contract.

In December of 1987, the Veterans Administration, acting in response to a series of unfavorable reports by state licensing officials regarding the standards of care prevailing at Bel Pre, decided to withdraw all of the veterans then under contract residence there. That action, in turn, prompted this suit. Plaintiff maintains that this en masse withdrawal was a breach of contract; it seeks damages measured against what it claims were the unexpired terms of residence of each of the removed patients.

The Government has moved for summary judgment. The contention is that the contract was an indefinite quantities contract—one that held out no promise by the Government as to the number of patients to be housed at Bel Pre or the expected length of their stay; hence, defendant argues that no damages are owing.

The issue was briefed by the parties and argument was heard on April 9, 1991. At the conclusion of the argument, the court indicated its intention to rule in defendant's favor. However, at plaintiff's request, entry of a final order was postponed pending plaintiff's submission of additional evidence purportedly favoring a different result. This submission was followed by a second round of briefing and a reargument of the case on November 14, 1991. Having considered the parties supplemental materials, the court now concludes that no change in analysis or outcome is warranted. Defendant is entitled to a ruling in its favor.

### II

■ The Restatement (Second) of Contracts § 33(2) (1979) states that the terms of a contract must "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Thus, damages as a remedy for breach of contract are available only where the obligation to be enforced has been fixed with reasonable certainty by the terms of the parties' agreement. If an essential term, such as the quantity term, has been omitted then there can be no basis for deciding whether the agreement has been kept or broken; the definiteness necessary for enforceability is lacking. *Willard, Sutherland & Co. v. United States*, 262 U.S. 489, 493, 43 S.Ct. 592, 594, 67 L.Ed. 1086 (1923); *Ralph Constr., Inc. v. United States*, 4 Cl.Ct. 727, 733 (1984).

■ That is the situation we encounter here. The agreement at issue, though titled "Contract For Furnishing Nursing Home Services To Beneficiaries Of The Veterans Administration," places the Government under no obligation to utilize the services provided by plaintiff. This is made clear by Paragraph 12 of the Contract Requirements which states that:

It is impossible to determine the exact or estimated amount which will be expended under this contract. It is understood that no obligation will be incurred by the

Veterans Administration under this contract until authorizations are issued for nursing home care of specific beneficiaries. The Veterans Administration agrees to make payment on a timely basis for services rendered in accordance with such authorizations upon receipt of billings submitted by the nursing home at the completion of each month's services. If a beneficiary is admitted to and discharged from the nursing home on the same calendar day, payment will be made for one day. Invoices shall be submitted to the Veterans Administration facility authorizing admission of the patient.

Because Paragraph 12 frees the Government of any duty to order the services contemplated by the contract, damages as a remedy in substitution for performance are not available. The agreement is enforceable only to the extent it has actually been performed. *Sutherland,* 262 U.S. at 494, 43 S.Ct. at 594.

■ Plaintiff endeavors to find an enforceable obligation in the terms of the "authorization" for nursing home care described in Paragraph 12 (quoted above). The authorization referred to, "VA Form 10–7078—Authorization and Invoice for Medical and Hospital Services," is essentially a purchase order for procurement of the nursing care services described in the parties' agreement. Among the various items noted in the blocked spaces of the form are (i) the patient's name, (ii) the service requested, and (iii) the period for which the authorization remains valid.

Relevant to plaintiff's argument are blocks 5 and 6 of the form. Block 5 specifies the period during which the authorization remains valid; block 6 specifies the services being authorized. Block 6 is captioned: "Services shown below are authorized for the period indicated in [block] 5 above." In the exhibit provided the court, block 6 contains the following entry: "Community Nursing Home Care/1987 VA Contract (Not To Exceed Six Months) (Skilled Care)."

Plaintiff maintains that the "Not To Exceed Six Months" language, when read in conjunction with the indicated authorization period (also shown as 6 months in the supplemental materials provided the court), denotes the total minimum period for which the requested services were to be provided. Accordingly, any period of residency less than that contemplated by the authorization (if not otherwise foreshortened by a change in the patient's needs) becomes a premature, and hence compensable, termination of the contract.

Plaintiff adds that this understanding of the contract is confirmed by the Government's financial records as well as by the parties' course of dealing. The Government's records, we are told, track the duration of a patient's residency both in terms of "obligated" funds remaining and in terms of "days left" to complete a six month stay. To plaintiff, therefore, these records evidence a recognition on the Government's part that the admission authorizations are essentially commitments for a fixed minimum duration.

As to the parties' course of dealing, the point is made that patients frequently remained at Bel Pre beyond the six month term thus underscoring the fact that the authorization contemplated the minimum duration of a stay, while the Government simultaneously retained an option to extend.

To further reinforce this position, plaintiff points out that the contract contained both a standard default clause (permitting the Government to terminate for, among other reasons, the contractor's failure to cure a deficiency in performance) and a "90 Day Mutual Termination" clause granting either party the right to terminate after 90 days notice in writing. Neither of these clauses, argues plaintiff, would fit into the scheme of things if the Government were free to terminate a patient's residency at Bel Pre whenever it chose.

■ We can agree with plaintiff's argument only in part. Bel Pre is correct in claiming that the definiteness necessary to render a contract enforceable need not exist at the outset of the contract. Rather, it suffices if definiteness exists at the time performance is undertaken. E. Allan Farnsworth, *Contracts* § 3.27 (1982).

However, the patient-care authorizations that plaintiff relies on do not overcome the lack of certainty that affects the parties' underlying agreement. The very words of the authorization erode plaintiff's point for they call for services, not in terms of a fixed period, but rather, in terms of a maximum period—one "Not To Exceed Six Months."

Read in their ordinary and usual sense, these words cannot be taken as an expression of commitment on the Government's part. They hold out no promise to maintain a patient in residency for any definite length of stay. Indeed, Paragraph 12 of the parties' agreement (quoted above) underscores the point when it anticipates the need to identify the contract's "daily" rate as the amount to be paid by the Government in those instances where "a beneficiary is admitted to and discharged from the nursing home on the same calendar day."

Properly interpreted, the words of the authorization set out an expectancy—as opposed to a duty—on the Government's part to call upon plaintiff's services for up to the maximum period stated. To read more than this into the words of the authorization is to twist their meaning.

Neither would the Government's accounting practices nor the parties' course of dealing justify an interpretation of the authorization language that departs from the everyday sense of the words used. That the Government should keep records of admitted patients in terms of dollars spent or days of residency remaining is hardly surprising given a contracting officer's fundamental responsibility to contain expenditures within the limits of obligated funds.

Similarly, extensions of periods of residency beyond an initial six month term provide no logical basis for calling that initial period a contractual minimum. Rather, such extensions emphasize the fact that the nursing care services called for are, in the final analysis, dictated by a patient's needs (subject, of course, to funding availability) and thus cannot rationally be addressed through contractual under-takings that commit the Government to fixed periods of nursing home care.

■ There remains for consideration plaintiff's argument based on the contract's convenience termination clause and its default clause. Plaintiff points out that such provisions take on meaning only in those contractual settings where the exchange of promises gives rise to enforceable rights and obligations. Therefore, contends plaintiff, the occurrence of such clauses here argues in favor of reading the contract to provide for a fixed term of patient residency and against the indefinite quantities interpretation urged by the Government.

Plaintiff's point is not insignificant. Contracts are instruments of commerce and one ought to assume, therefore, that the language they recite was drafted with the necessities of the transaction in mind. It is for that reason then that, in interpreting contracts, courts favor a rule that "gives a reasonable, lawful, and effective meaning to all the terms [rather than one] which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts § 203(a) (1979).

Here, however, adherence to this rule of interpretation is not analytically possible. By its express terms, the contract places the Government under no obligation until authorizations for nursing home care of specific beneficiaries have been issued. Further, such authorizations, when issued, obligate the Government to pay only for the amount of services requested and performed. The arrangement is entirely open-ended. There being no obligation to pay except for services actually performed, the inclusion of termination clauses in the contract is an economically empty gesture.

### III

For the reasons stated, defendant's motion for summary judgment is granted. The Clerk shall enter judgment dismissing the complaint for failure to state a claim on which relief can be granted. No costs.