STINGER INDUSTRIES, LLC,
Plaintiff–Appellant,

v.

HILL–ROM COMPANY, INC.;  HILL–
ROM MEDAES, INC., Defendants–
Appellees.

No. 00–5997.

United States Court of Appeals,
Sixth Circuit.

Nov. 21, 2001.

Before KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

PER CURIAM.

Plaintiff appeals the dismissal of its complaint for breach of a distribution contract. The district court found that the contract was illusory because it lacked mutuality of obligation between the parties.

Plaintiff–Appellant Stinger Industries, LLC ("Stinger") is a Tennessee corporation that manufactures medical equipment and supplies.  Defendant Medaes, Inc. ("Medaes") is a Georgia corporation that distributes medical supplies and equipment.  On August 21, 1998, Medaes changed its name to Hill–Rom Medaes,

Inc. ("Hill–Rom Medaes"). Defendant–Appellee Hill–Rom Company, Inc., ("Hill–Rom") is an Indiana corporation.

On January 9, 1998, Medaes and Stinger entered the "Medaes & Stinger Industries, LLC Distribution Agreement" (the "Agreement"). Hill–Rom knew of the Agreement before January 9, 1998. In February 1998, Hill–Rom acquired Hill–Rom Medaes by purchasing all of its stock. After the acquisition, Hill–Rom decided to integrate the businesses and eliminate the Stinger product from Hill–Rom Medaes' product lines. In April 1998, Hill–Rom told Stinger that it would decide within 60–90 days whether it would sell Stinger products, even though Hill–Rom allegedly already had decided to eliminate Stinger products. Stinger did not formally terminate the Agreement, thinking that Hill–Rom Medaes might still sell its products. By not immediately disclosing its decision to drop Stinger products, Hill–Rom allegedly increased Stinger's cost. In 1999, Hill–Rom eliminated commissions to Hill–Rom Medaes' employees for sales of Stinger products. This allegedly induced Hill–Rom Medaes to breach the Agreement by not promoting the sale of Stinger products.

Under the terms of the Agreement, Medaes was granted "the non-exclusive right to purchase the products listed in Exhibit A ... for resale into selected health care/medical markets." Stinger could sell its products through Medaes or any other distributor or directly to any other purchaser. The Agreement did not provide for commissions from Stinger to Medaes on sales of its products. Rather, Medaes was simply entitled to resell Stinger products for profit to retail purchases. The Agreement does not require Medaes to sell a minimum quota of products. Instead, Medaes only "agrees to devote a significant effort to promote in a proper and businesslike manner the sale of and stimulate interest in the Products within the Territory set forth [herein]."

The Agreement also provides that "Stinger Industries, LLC agrees to make Products available for sale to Medaes on the terms set forth herein." However, the terms are not absolute. The Agreement provides that Medaes' orders are binding on Stinger only if Stinger expressly accepts the orders. However, the Agreement does not require Stinger to accept any orders. Whether Stinger chooses to accept any order is solely within Stinger's discretion. Further, the Agreement does not penalize Stinger for rejecting any of Medaes' orders. Moreover, the Agreement provides that Stinger "shall have the right to discontinue any of the Products" identified in the Agreement upon "reasonable advance notice" to Medaes. Stinger could unilaterally discontinue any or all of the products which were the subjects of the Agreement.

The Agreement also adopts a price list for Stinger products (Exhibit A to the Agreement) that Stinger would use if it accepted Medaes' orders. However, the Agreement also provides that Stinger's "prices are subject to change not more frequently than once each year at Stinger['s] sole discretion" and that the "[p]rices in effect at the time that Medaes submits its order to Stinger ... and Stinger['s] acceptance of the order shall control." As of the date of the Agreement, the prices in Exhibit A controlled; however, Stinger could unilaterally change the prices of the products once a year at its sole discretion or choose not to accept Medaes' order.

The Agreement also does not obligate Stinger to ship products in a timely fashion and explicitly relieves Stinger of liability for its failure to do so. The Agreement only obligates Stinger to "use its best efforts to fill Medaes orders in the ordinary course of business, but all delivery dates

for the Products which may be scheduled by the parties shall be estimates. Stinger ... shall not be in breach of this Agreement or any other legal duty or obligations to Medaes if it fails to meet any delivery dates." The Agreement would only penalize Stinger for untimely delivery if Stinger expressly accepted an order that informed Stinger that failure to deliver by a certain date would result in penalties. Stinger could choose not to accept such an order.

On October 13, 1999, Stinger sued Hill–Rom Medaes and Hill–Rom, alleging four counts: (1) breach of contract against Hill–Rom Medaes; (2) statutory interference with contract against Hill–Rom with a triple damage penalty; (3) common law tortious interference with contract against Hill–Rom; and (4) breach of contract against Hill–Rom. J.A. at 10–12. Stinger demanded damages of $4,498,689.00 for breach of contract against Hill–Rom Medaes and Hill–Rom; $4,498,689.00 for common law interference with contract against Hill–Rom; and $13,496,067.00 in triple damages for statutory interference with contract against Hill–Rom.

On April 25, 2000, Hill–Rom and Hill–Rom Medaes moved for judgment on the pleadings. A magistrate judge recommended granting the motion, because Stinger was "not necessarily obliged to perform any services at all under the Agreement." The district court accepted the recommendation and dismissed Stinger's claim.

Stinger claims that the Agreement has the required mutuality of obligation to be an enforceable contract.

■ This Court reviews an entry of judgment on the pleadings de novo. *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998).

■ "Mutuality of obligation is essential to the validity of an executory bilateral contract ... mutuality is absent when only one of the contracting parties is bound to perform, and the other party remains entirely free to choose whether or not to perform, and the rights of the parties exist at the option of one only." *First Sarasota Corp. v. Summit Co.,* 633 F.2d 214 (table) 1980 LEXIS 13583 (6th Cir.1980) (quoting C.J.S. Contracts 100(1) at pp. 790–91); *Willard, Sutherland & Co. v. United States,* 262 U.S. 489, 43 S.Ct. 592, 67 L.Ed. 1086 (1923); *General Motors Corp. v. Keener Motors, Inc.,* 194 F.2d 669 (6th Cir.1952); *Tennessee Enamel Mfg. Co. v. Stoves, Inc.,* 192 F.2d 863 (6th Cir.1951). "A promise that does not put any limitation on the freedom of the alleged promissor but leaves his future action subject only to his own will is illusory. It is not enforceable against the one making it nor operative as consideration for a return promise." *Pippin Way v. Four Star Music Co. (In re Four Star Music Co.),* 2 B.R. 454, 460 (Bankr.M.D.Tenn.1979); *Loudenback Fertilizer Co. v. Tennessee Phosphate Co.,* 121 F. 298, 302 (6th Cir.1903) (holding that mutuality of obligation is essential for contracts based on mutual promises and that a contract is unenforceable where a party is free to perform or not perform the contract.).

■ A distribution agreement that does not require a manufacturer to provide any product or does not require the distributor to purchase any product lacks mutuality and is unenforceable. *Big Cola Corp. v. World Bottling Co.,* 134 F.2d 718, 722 (6th Cir.1943) (holding a distribution/license agreement unenforceable for lack of mutuality where the distributor's only obligation was to maintain a record of the sales and remit royalties thereon, but was not obligated to sell any of the product); *Curtiss Candy Co. v. Silberman,* 45 F.2d 451, 452 (6th Cir.1930) (holding that an executory distribution agreement that did not require the manufacturer to provide or

the distributor to purchase any specific quantity of product lacked the required mutuality to enforce it).

In the Agreement, Stinger agrees to make products available for sale to Medaes on the terms set forth in the Agreement; however, Stinger may decide not to sell products to Medaes and will not incur any penalty. Under the Agreement, Stinger has full discretion to accept or reject orders of Medaes. Further, Stinger has the unilateral right to discontinue any or all of the products subject to the Agreement. Stinger is not required to sell its products only through Medaes and retains the right to sell its products through other distributors or directly to customers. Stinger was also not required to sell its products to Medaes at any particular price because it could change the prices once a year, at its sole discretion, or could choose not to accept the order. Finally, Stinger was not required to ship the products in a timely manner and was not liable if it failed to do so.

Stinger argues that its promises to provide products, warranties, and information is adequate consideration to enforce the Agreement. As the district court noted, mutual promises may be valid consideration to support an agreement, but the promises must be absolute and not illusory. The court relied on *Velie Motor Car Co. v. Kopmeier Motor Car Co.*, 194 F. 324 (7th Cir.1912), which stated:

"It is well understood that, to avail as consideration to [an executory] contract, the promise must be absolute and certain.... Under the clause in this contract providing for a revocation by the plaintiff and the legal consequences that flow therefrom, the consideration cannot be predicated on mutual promises and benefits. Therefore, [an] essential element of a binding contract appears to be wanting.... [W]hile [the contract] re-mains executory there must be mutuality."

*Id.* at 327.

Here the promises were not absolute. Stinger was obligated to perform its promises only after it accepted orders, which Stinger, in its sole discretion, could decide not to accept. As the district court found: "the Agreement at issue seeks to establish a non-exclusive relationship between two parties which may be effectuated (or not) at the whim of only one party ... [and therefore] 'lacks that mutuality necessary to make it enforceable in so concerned.'"

Accordingly, we AFFIRM the judgment of the district court.