ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| American General Trading & Contracting, WLL | ) ASBCA No. 56758 |
| | ) |
| Under Contract No. DABM06-03-C-0009 | ) |

APPEARANCES FOR THE APPELLANT:  Vonda K. Vandaveer, Esq.
V.K. Vandaveer, P.L.L.C.
Washington, DC

Michael F. Brown, Esq.
Peterson, Berk & Cross
Appleton, WI

APPEARANCES FOR THE GOVERNMENT:  Raymond M. Saunders, Esq.
Army Chief Trial Attorney
LTC Brian J. Chapuran, JA
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MELNICK UPON THE PARTIES'
SECOND SET OF CROSS-MOTIONS FOR SUMMARY JUDGMENT

American General Trading & Contracting, WLL (appellant or AGT) was awarded a contract by the United States Army to provide laundry services at five military camps established in Kuwait prior to the 2003 invasion of Iraq. It alleges the Army negligently estimated its laundry needs in the camps, which virtually emptied shortly after award due to the invasion. It seeks damages resulting from that alleged breach. Separately, AGT also claims it entered into an implied-in-fact contract to provide laundry services at two additional camps in Kuwait, which it contends the government also breached. Previously, we denied cross-motions for summary judgment respecting the first claim related to the five camp express contract, denied a government motion to dismiss the second claim, and ruled that cross-motions for summary judgment respecting the second claim were moot. *American General Trading & Contracting, WLL,* ASBCA No. 56758 12-1 BCA ¶ 34,905.

The parties now cross-move for summary judgment again. AGT contends that the undisputed facts show that the government breached both contracts. The government contends the five camp express contract is not subject to a negligent estimate claim, and that no additional implied-in-fact contract was formed. We deny the government's motion respecting the first claim and defer ruling upon AGT's motion on that claim until

discovery is completed. We grant the government's motion respecting the second claim and deny appellant's motion on the second claim.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

### I. Contract No. DABM06-03-C-0009

1. On 17 February 2003, the U.S. Army Central Command-Kuwait awarded Contract No. DABM06-03-C-0009 ("09 contract") to AGT to perform laundry services at five military camps in Kuwait. As modified, the 09 contract was for six months, with an option to extend for six months. (R4, tabs 3, 4) The solicitation, issued 23 January 2003, and awarded contract provided that it was a firm-fixed unit-priced contract with total item numbers adjustment. Thus, the contractor's payment depended on the actual number of items laundered. (R4, tab 1 at 1-2, 21, 29, tab 3 at 2, 14) The solicitation and contract estimated that the laundry requirements for each camp would be 1,000 soldiers, capable of surging up to 7,000 soldiers per camp on a monthly basis, with the number of items to be laundered ranging up to 17,640,000 (R4, tab 1 at 2, 7, 22, tab 3 at 2, 9, 15). The solicitation and contract also estimated the average number of soldiers in each camp would be 3,500, equating to 8,820,000 items (R4, tab 1 at 2, tab 3 at 2). The solicitation informed bidders that "[t]he contract is based on the average number of troops for each camp" (R4, tab 1 at 29). However, the Price Quote Guidelines in the solicitation provided differently that bids should be based on "7,000 troops x 5 Camps x 4 weeks/mo x 21 pieces x 6 mo = 17,640,000 pieces" (R4, tab 1 at 23). The parties agreed to a set of item rates under the contract (app. prop. findings ¶ 31; gov't prop. findings ¶ 38). The contract does not contain the FAR 52.216-21, REQUIREMENTS (OCT 1995) clause, nor does it contain the FAR 52.216-22, INDEFINITE QUANTITY (OCT 1995) clause.

2. AGT performed laundry services under the contract (gov't prop. findings ¶¶ 1-2; George decl. ¶ 19[1]). AGT invoiced for its services under the contract and was paid by the government (app. prop. findings ¶ 32; gov't prop. findings ¶¶ 81-84).

3. On 20 March 2003, the president ordered the invasion of Iraq (1st amended compl. and answer, part I ¶ 33).

### II. Camps Victory and 35th Brigade

4. In late June, 2003, Ms. Colleen Rodriguez, a contracting officer with the Kuwait Directorate of contracting, contacted Ms. Sheila Gittens, AGT's president. Ms. Rodriguez asked AGT to establish laundry facilities at two additional camps named Victory and 35th Brigade. Ms. Rodriguez requested Ms. Gittens to provide a pricing scheme that would meet the costs of the operation. (Gittens decl. ¶ 7) Ms. Gittens'

---

[1] Mr. George declares that he is AGT's Middle East manager (George decl. ¶ 1).

22 June email response addressed Camp Victory. She provided a list of equipment to perform the services, and quoted item rates that were higher than those agreed upon for the 09 contract. (*Id.* ¶ 8, ex. L; George decl. ¶ 41; Cockerham tr. 55-56[2]). Ms. Rodriguez verbally instructed Ms. Gittens to proceed (Gittens decl. ¶ 9).

5. On 25 June 2003, Ms. Gittens emailed Ms. Rodriguez that AGT had "set up" purchase orders for equipment and coordinated with a Lt. Tucker to designate a site for the laundry at Camp Victory. She therefore requested a written notice to proceed. Ms. Rodriguez's response instructed AGT to "keep proceeding with [its] efforts." She explained that she was in the process of "preparing a change order" and hoped to have one for AGT later in the week. However, no modification was sent. (Gittens decl. ¶ 11, ex. M) AGT then proceeded with the procurements and mobilization for Camp Victory (*id.* ¶ 12).

6. On 26 June 2003, Ms. Rodriguez emailed Ms. Gittens, inquiring about when AGT could have "a full service laundry" at 35th Brigade. Ms. Gittens responded that a laundry could be available at that location by 12 July, depending on when she received a notice to proceed. She continued that Ms. Rodriguez should "note that both Victory and 35[th] [Brigade] will be at the new rates previously given." (Gittens decl. ¶ 13, ex. N) On 30 June 2003, Ms. Gittens emailed Ms. Rodriguez that she was still waiting for a notice to proceed to establish the facility at 35th Brigade, and requested confirmation of the prices she had previously provided. Ms. Rodriguez's response provided the notice to proceed, but requested documentation regarding AGT's price increases. (*Id.* ¶ 14, ex. O)

7. Based on the notices to proceed it received, and with the government's approval, AGT built and operated laundry facilities at both camps (Gittens decl. ¶ 16, ex. P; Rodriguez tr. 34-37). AGT claims to have incurred KD 39,476.400 establishing and operating the facilities (George decl. ¶ 38). However, it did not invoice the government for those services at the rates it had quoted. Instead, because the government did not issue a contract modification approving those rates, AGT charged the same rates that were in effect for the 09 contract. Between commencement of services at the additional camps in July, and 31 August, AGT laundered 151,107 items. The numbers are consistent with soldier counts in the hundreds in each camp. AGT's total revenues for those services were KD 23,357.000. (*Id.* ¶¶ 39-40)

III.    AGT's Claim

8. On 12 October 2003, AGT submitted a certified claim for KD 1,271,991. AGT claimed the government had negligently estimated its requirements for the 09 contract, and failed to pay amounts owed for services at the two additional camps. (R4, tab 8) On

---

[2]    CPT Cockerham was assigned to the contracting command (Cockerham tr. 24).

3

11 August 2004, AGT submitted a "corrected" certified claim for KD 1,358,241.400 that "replaced" the original (R4, tab 15).

9. On 2 December 2008, the contracting officer issued a final decision denying AGT's claim (R4, tab 16).

10. By letter dated 26 February 2009, AGT appealed the denial of its claim to this Board (R4, tab 17).

## DECISION

Summary judgment should be granted if it has been shown that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment shall be entered against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" because "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

## I. The 09 Contract

AGT claims the government breached the 09 contract by negligently estimating its laundry requirements. It contends that, prior to award of the contract, the government knew that the soldiers in the camps would be ordered to invade Iraq, significantly reducing the number of personnel in the camps below the estimated average of 3,500 over the contract's 6-month term. It argues the government's negligent estimate constitutes a breach of contract, entitling it to a recovery. Both parties have moved for summary judgment on this claim. AGT's motion contends that the undisputed facts dictate it should recover. The government's cross-motion maintains the 09 contract is not subject to a negligent estimate claim as a matter of law. Because the government's cross-motion presents the threshold issue whether the contract is subject to the claim, we address it first.

### A. The Government's Motion

As we previously held in this appeal, when estimates are placed in certain types of contract solicitations, contractors are entitled to rely upon them. A negligent estimate as to a material matter is a breach of contract. *American General Trading & Contracting,* 12-1 BCA ¶ 34,905 at 171,635. However, not all types of contracts are subject to such claims. As we observed, indefinite quantity contracts are not. *Id.* at 171,635-36. Neither party claims the 09 contract is an indefinite quantity contract, and we agree. It does not contain the Indefinite Quantity clause, nor does it commit the government to

4

purchase a minimum quantity of services, which is the key characteristic of such a contract. *Id.*

One type of contract that is subject to negligent estimate claims is a requirements type contract. 12-1 BCA ¶ 34,905 at 171,635. Such contracts do not guarantee any minimum purchase, but they commit the government to fill all of some particularly defined requirements for services with the contractor during a specified period. *Id.* We agree with the government that the 09 contract is not a requirements type contract. The contract does not contain the Requirements clause, nor does it otherwise promise AGT that it would be an exclusive source of laundry services. *See Modern Sys. Tech. Corp. v. United States,* 979 F.2d 200, 205-06 (Fed. Cir. 1992).

The government implies that because it was not obligated to purchase either its requirements or a stated minimum of services from AGT under the 09 contract, the government was not committed to purchase any particular quantity of services. It contends such an illusory arrangement is not subject to a negligent estimate claim, which it implies only applies to requirements type contracts.

Given that the 09 contract contains neither a minimum quantity clause nor a requirements clause, it was not enforceable at its inception since the government was not obligated to take any ascertainable quantity of laundry services. *Willard, Sutherland & Co. v. United States,* 262 U.S. 489, 493-94 (1923). However, the contract "became valid and binding to the extent that it was performed." *Id.* at 494; *see also Coyle's Pest Control, Inc. v. Cuomo,* 154 F.3d 1302, 1306 (Fed. Cir. 1998). It is undisputed that AGT performed services under the contract, and received payment from the government (SOF ¶ 2). Thus, the 09 contract is now "definite and binding" as a result of the "conduct and performance of the parties." *Willard, Sutherland & Co,* 262 U.S. at 494. As a binding contract, it is subject to a claim for breach. The only question is whether it is somehow exempt from the kind of breach claim arising from a negligent estimate.

As we have already noted, requirements type contracts are not the only kind of contracts subject to negligent estimate claims. *American General Trading & Contracting,* 12-1 BCA ¶ 34,905 at 171,635. In *Womack v. United States,* 389 F.2d 793 (Ct. Cl. 1968), the government negligently underestimated the size of a job annotating title plats for which it sought fixed-price bids for the whole project. Recognizing that the estimate was intended to guide bidders, the court held the contractor was entitled to recover. In *Timber Investors, Inc. v. United States,* 587 F.2d 472 (Ct. Cl. 1978), a timber sale contract required the contractor to construct roads on forest land for a fixed credit on the timber purchase price. The credit was based on a government estimate of the work and related costs that the contractor claimed were unreasonably inaccurate. The court recognized that an inaccurate estimate could support a recovery by the contractor if it proved its claim, which it did not. In *Rumsfeld v. Applied Companies, Inc.,* 325 F.3d 1328, 1340-41 (Fed. Cir. 2003), the court acknowledged that a negligent estimate claim

5

had previously been sustained in a case that did not involve a requirements contract. What mattered was not the type of contract but whether "estimates of volume are material to the contract." *Id.* at 1340; *see also Ravens Grp., Inc. v. United States,* 112 Fed. Cl. 39 (2013) (acknowledging the applicability of a negligent estimate claim to the firm-fixed price portion of a contract to respond to monthly service calls).

Estimates of volume are material to the 09 contract. The solicitation and contract represent that the number of personnel would vary from 1000-7000 per Camp. They also state that the average number of soldiers per camp will be 3,500. The solicitation expressly instructs AGT to bid based on its receipt of laundry pieces from 7000 soldiers in each camp, but warns that it will only be paid for the total number of items it actually receives. (SOF ¶ 1) AGT has presented evidence that it relied on the government's estimates to establish its item rates, indicating that the prices ultimately paid to it under the binding contract that was formed were driven by those representations (George decl. ¶¶ 8-17). To the extent the estimates underlying the 09 contract's prices were negligently prepared, and that AGT reasonably relied on them, there is no reason AGT cannot pursue a claim based on that negligence. *See Konitz Contracting, Inc.,* ASBCA No. 52299, 01-2 BCA ¶ 31,572 at 155,902 (acknowledging that a contract lacking both a requirements and indefinite quantities clause, and only enforceable to the extent performed, remains subject to a claim for equitable price adjustment); *Envtl. Quality Mgmt., Inc. v. Environmental Protection Agency,* CBCA No. 3072, 13 BCA ¶ 35,300 (observing that, even if a contract is neither requirements nor indefinite quantity, a claim based upon a variation in estimated quantities is still cognizable).

Though relied upon heavily by the government, *Eastern New Mexico University-Roswell,* ASBCA No. 57110, 12-2 BCA ¶ 35,090, does not dictate otherwise. There, the Board ruled that the contract at issue was neither an indefinite quantities contract, a requirements contract, nor a definite quantities contract. Therefore, the Board rejected the contractor's claim that the government failed to order an alleged minimum quantity. *Eastern New Mexico University-Roswell* did not hold that, to the extent performed, the contract was immune from a negligent estimate claim. That issue was not presented.

We recognize that since the 09 contract was only binding to the extent it was performed, and therefore AGT could have declined to perform at the contract rates, AGT may have little to complain about past the point in time it became reasonably clear the government's estimates were negligently prepared. Whether and when that might have been the case requires more thorough development of the record. Right now we only conclude that the contract is not immune from a negligent estimate claim as a matter of law.

6

Because the government has not shown that it is entitled to summary judgment upon AGT's negligent estimate claim, its motion for summary judgment on that claim is denied.

B.    AGT's Motion

AGT presents detailed evidence in support of its contention that the government's estimates were negligently prepared and that it was damaged. The government has responded, but AGT has also separately moved to compel responses to document requests it states are relevant to its motion. We granted part of AGT's motion to compel. Therefore, we will defer ruling upon AGT's motion for summary judgment on the 09 contract until its discovery is complete.

II.    The Implied-In-Fact Contract Claim

In addition to its negligent estimate claim arising from the 09 contract, AGT also claims that the government breached an implied-in-fact contract relating to Camps Victory and 35th Brigade.[3] It contends that the contracting officer agreed to compensate AGT for all its costs providing laundry services at those camps. Accordingly, it seeks the difference between its alleged KD 39,476.400 cost of performing and its KD 23,357.000 invoice receipts. Both parties seek summary judgment. The government contends there is no evidence that the parties formed an implied-in-fact contract in which the government agreed to pay more than the 09 contract's rates for AGT's services at the two camps, or to pay all of AGT's costs providing facilities at those locations. To defeat the government's motion for summary judgment, AGT must proffer evidence of an implied-in-fact contract obligating the government to pay its excess costs. *Celotex*, 477 U.S. at 322 (requiring summary judgment to be entered against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

As we have held in this appeal, an implied-in-fact contract is based on a meeting of the minds not embodied in an express contract, but inferred from conduct of the parties showing their tacit understanding. *American General Trading & Contracting*, 12-1 BCA ¶ 34,905 at 171,639. To prove an implied-in-fact contract, AGT must demonstrate the party acting for the government had contracting authority, and then facts showing mutuality of intent, consideration, and lack of ambiguity in offer and acceptance. *Id.*

Assuming without deciding that Ms. Rodriguez was authorized to bind the government to the alleged contract for the two camps, AGT has failed to present evidence that the government agreed to pay all of AGT's costs. AGT's evidence shows that

---

[3] Previously, we ruled we lacked jurisdiction over an additional claim by AGT that it is entitled to compensation for these services under FAR 50.103-2(c).

7

Ms. Rodriguez requested AGT to establish laundry facilities at the two additional camps, and Ms. Gittens responded by quoting new, higher item rates for Camp Victory (SOF ¶ 4). Ms. Rodriguez replied that AGT should proceed (SOF ¶ 5). She then reiterated her request for the 35th Brigade site. In response, Ms. Gittens provided a date that location could be ready, and made clear that services at both facilities would be at the new rates. She sought confirmation of those prices from Ms. Rodriguez. Ms. Rodriguez provided the notice to proceed for 35th Brigade, but requested documentation supporting the new prices. (SOF ¶ 6) AGT constructed facilities at the two sites, provided laundry services, and invoiced the government. However, AGT did not invoice for the new prices. Because the government never approved the new rates, AGT only charged the rates applicable to the 09 contract. The government paid those invoices. (SOF ¶ 7)

This evidence demonstrates statements and conduct by the parties consistent with an intent by all to contract for AGT's services at the two sites; and it shows that consideration was provided by both parties. However, it does not show an unambiguous promise by the government to pay AGT's costs, whatever they were. AGT presents no evidence that it demanded, or the government accepted, some form of cost reimbursement arrangement. There is evidence AGT proposed new, higher item prices given its actual experience performing the 09 contract, but AGT concedes that the parties never agreed to those prices (app. mot. at 37). That concession is consistent with AGT's evidence that it performed services at the two camps while only invoicing the government at the lower rates it had charged under the 09 contract. AGT implies that its lower charges are somehow Ms. Rodriguez's fault because she never issued a modification (presumably to the 09 contract) approving the higher prices AGT quoted (app. prop. findings ¶ 96). The suggestion does not assist AGT. If anything, it is simply more evidence that the government never agreed to AGT's higher rates and that AGT consented anyway to the lower rates it ultimately invoiced. Given AGT's failure to present any evidence that the government agreed to pay costs above the invoices it has already paid, its motion for summary judgment upon its implied-in-fact contract claim is denied, and the government's motion is granted.

## CONCLUSION

The government's motion for summary judgment on the 09 contract claim is denied. AGT's motion for summary judgment on the implied-in-fact contract claim is denied. The government's motion for summary judgment on the implied-in-fact contract claim is granted.

Dated: 23 April 2014

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 56758, Appeal of American General Trading & Contracting, WLL, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9