**COYLE'S PEST CONTROL, INC., Appellant,**

v.

**Andrew CUOMO, Secretary of Housing and Urban Development, Appellee.**

No. 97–1234.

United States Court of Appeals, Federal Circuit.

Aug. 24, 1998.

Phillip K. Chung, Chung & Press, P.C., McLean, Virginia, argued for appellant. With him on the brief were Daniel M. Press and Russell B. Adams, III. Also on the brief were Kenneth A. Martin and Kurt M. Rylander, Martin & Rylander, P.C., Washington, DC.

Lara Levinson, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director. Of counsel on the brief was Bruce M. Kasson, Attorney, Office of General Counsel, Division of Training and Administrative Law, Department of Housing and Urban Development, Washington, DC.

Before NEWMAN, PLAGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

On summary judgment, the Department of Housing and Urban Development's Board of Contract Appeals (the Board) denied Coyle's Pest Control, Inc.'s (Coyle's) breach of contract claim for $1,525,170.74. *See Coyle's Pest Control, Inc.*, HUD BCA No. 96–A–121–C10, 97–1 BCA ¶ 28,717 (Jan. 6, 1997). Because the Board correctly determined that the contract was invalid and unenforceable when interpreted as either a requirements or an indefinite quantity contract, this court affirms.

## I.

The Department of Housing and Urban Development (HUD), through the Small Business Administration, awarded Contract No. H06C94050400000 to Coyle for termite inspection and subterranean treatment of HUD-owned properties in thirty-four Texas counties. Section B.1 of the contract required Coyle "to furnish all labor, service, equipment, transportation, materials and supplies to provide subterranean termite control and related services on assigned properties owned by [HUD]." Clause C.2.D stated that properties would be "assigned on an *as-needed basis.*" (emphasis added).

The contract, effective December 20, 1993, provided for a one-year term (the base year) as well as two one-year options. Section B.2 established a fixed price for inspection services and a two-tier, fixed price scheme for treatment services. This section set treatment prices at one of two levels depending on whether the range of properties assigned monthly was 0–170 or 171–240; the option years included modest increases for each of the two levels. The estimated value of the contract, including the base year and the two option years, was $1,930,000.

Section L.14 labeled the contract a "fixed unit rate-indefinite quantity contract." Nonetheless, the contract did not include two provisions typically present in indefinite quantity contracts: (1) a specified minimum number of properties to be assigned to Coyle; and (2) the indefinite quantity clause found in Federal Acquisition Regulation (FAR) 52.216–22 and then required by FAR 16.505(e). *See* 48 C.F.R §§ 52.216–22, 16.505(e) (1993). Also absent were two provisions generally associated with requirements contracts: (1) a clause requiring HUD to order all of its subterranean termite inspections and treatments from Coyle; and (2) the requirements clause found in FAR 52.216–21 (a mandatory feature of requirements contracts then under FAR 16.505(d)). *See id* §§ 52.216–21, 16.505(d).

In June 1995, during the first option year, HUD proposed Modification No. 4 to the contract. The proposed modification prevented Coyle from treating properties that HUD had already inspected and found free of termite infestation. Coyle rejected the modification. Thereafter, HUD informed Coyle that it would receive a "substantially lesser amount of properties" for termite services. At about the same time, in July 1995, HUD also altered its national policy for termite services and began to permit buyers of HUD properties to order their own termite inspections. Due to changes in the parties' relationship, ultimately, on September 25,

1995, they agreed to a revised version of Modification No. 4. As adopted, Modification No. 4 increased prices for both inspection and treatment services beyond that originally contemplated for the option years. More specifically, the parties changed the two-tiered pricing system for treatment services to a higher, single-rate system.

In sum, HUD assigned properties to Coyle from the beginning of the base year to slightly beyond the contract's first option year and paid to Coyle $694,228.04 for services during this period. On December 7, 1995, however, Coyle submitted a certified claim for $1,525,170.74—an amount equal to the difference between the estimated value of the contract ($1,930,000) and the amount HUD actually paid during the base year ($404,829.26). Coyle asserted that the contract was a firm fixed price agreement that entitled it to the estimated value of the contract. The contracting officer rejected Coyle's characterization of the contract and denied its claim. On appeal to the Board, Coyle asserted an alternative theory for recovery, that the contract was susceptible to interpretation as a valid and enforceable requirements contract. The Board rejected this characterization and denied Coyle's claim on January 6, 1997. Coyle appeals.

## II.

■ This court reviews the Board's decision under the standard set forth in the Contract Disputes Act, 41 U.S.C. § 609(b) (1994). Under that standard,

> the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

*Id.* Because contract interpretation questions are questions of law, *see Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed. Cir.1985), this court reviews those issues without deference to the trial forum; *see* 41 U.S.C. § 609(b); *Aydin Corp. v. Widnall,* 61 F.3d 1571, 1577 (Fed.Cir.1995). Notwithstanding this lack of deference, the "Board's interpretation of a contract will be given

careful consideration and accorded great respect." *Fortec Constructors,* 760 F.2d at 1291.

## III.

The Board, in a concise, well-reasoned opinion, held:

> The contract at issue in this appeal … does not contain the necessary elements of an enforceable indefinite quantity contract, nor an enforceable requirements contract. The enforcement of such a contract would fail for lack of consideration in the absence of a clause stating a minimum quantity or a clause requiring [HUD] to purchase all of its requirements from [Coyle]. Because the contract is not enforceable for lack of consideration, [Coyle] is entitled to payment only for services ordered by [HUD] and performed by [Coyle]. It is undisputed that [Coyle] has been paid for all services performed. Consequently, we must conclude that [Coyle's] claim for an additional payment of $1,525,170.74 fails as a matter of law.

*Coyle's Pest Control,* 97–1 BCA ¶ 28,717 at 143,345. This court discerns no error in the Board's reasoning or conclusion.

■ In approving the Board's judgment, this court rejects the notion that *Torncello v. United States,* 231 Ct.Cl. 20, 681 F.2d 756 (1982) (en banc), requires it to save an otherwise unenforceable indefinite quantity contract by interpreting it as an "implied" requirements contract. *See id.* 681 F.2d at 761–62. Coyle extracts out of context from *Torncello* two inflexible rules for contract interpretation. First, "contract terms … must fit into one of the three possible types of supply contracts: those for a definite quantity, those for an indefinite quantity and those for requirements." *Id.* at 761 (citing *Mason v. United States,* 222 Ct.Cl. 436, 615 F.2d 1343, 1347 (1980)). Second, a court must "assume that the parties intended that a binding contract be formed. Thus, any choice of alternative interpretations, with one interpretation saving the contract and the other voiding it, should be resolved in favor of the interpretation that saves the contract." *Id.* Applying its reading of *Torncello* to this case, Coyle argues that its contract with

HUD qualifies as either an indefinite quantity contract or a requirements contract. Because it lacks a minimum quantity term, Coyle continues, the contract should be interpreted as a requirements contract.

This court, however, does not read *Torncello* to require the reasoning urged by Coyle. *Torncello* addressed primarily the effect of the government's standard "termination for convenience" clause on a requirements contract. *See id.* at 757. The Armed Services Board of Contract Appeals, without ruling on the type of contract at issue, relied upon the termination clause to deny the contractor's claim against the government for diversion of business to competing bidders. *See id.* at 760. Before reaching this issue, the Court of Claims proceeded to examine the nature of the contract, subject to the strictures of its role as a court of review. *See id.* ("[This court is] constrained to make no determination as an original matter that we could not make as a court of review in a case that properly presented the issue."). The government had urged the Court of Claims to construe the agreement as an indefinite quantity contract—an argument designed to "forestall any further argument" on the diversion issue. *Id.* Apparently following the rules set forth above, a plurality of the Court of Claims read the agreement as a requirements contract. *See id.* at 762.

Importantly, the *Torncello* plurality as well as the concurring opinions agreed (though by different reasoning) that the agreement was a requirements contract. *See, e.g., id.* at 773 (Friedman, C.J., concurring) ("As I understand the court's opinion, the court holds only that when the government enters into a requirements contract...."). Therefore, the Court of Claims proceeded to address the implications of the Government's diversion of required work to other parties. This case, however, does not fit into any of the three neat categories Coyle extracts from *Torncello*. The record does not support the conclusion that the agreement was a requirements contract. Indeed the contract called itself an indefinite quantities contract (albeit without a minimum quantity clause) and lacked the terms of a requirement contract. Finally, Coyle does not maintain that the contract fits into the third category of definite quantities contracts.

To the contrary, a thorough examination of *Torncello* reveals that the plurality recognized that a contract may not be susceptible to interpretation as either a requirements contract or an indefinite quantities contract. In its discussion of requirements contracts, the court noted that "[t]he entitlement of the seller to *all* of the buyer's requirements is the key, for if the buyer were able to turn elsewhere for some of its needs, then the contract would not be distinguishable from an indefinite quantities contract with no stated minimum, unenforceable as we have stated." *Id.* at 761–62. Thus, the *Torncello* court implicitly rejected a rule of "saving the contract" by interpreting it as a requirements contract when it is not so susceptible.

## IV.

 Setting aside Coyle's overreaching interpretation of *Torncello* renders analysis of this contract relatively straightforward. At the outset, neither party disputes the existence of a valid, binding agreement; the dispute here centers on the scope and nature of the agreement. Next, this court assesses the merits of interpreting this agreement as a requirements contract, as Coyle has asserted. A requirements contract

> is formed when the seller has the exclusive right and legal obligation to fill all of the buyer's needs for the goods or services described in the contract.... [A]n essential element of a requirements contract is the promise by the buyer to purchase the subject matter of the contract exclusively from the seller.

*Modern Sys. Tech. Corp. v. United States,* 979 F.2d 200, 205 (Fed.Cir.1992) (citations omitted). As this passage suggests, a requirements contract necessarily obligates the Government to purchase exclusively from a single source. Because this agreement does not include the FAR requirements clause, it is more difficult to find the required exclusivity.

The contract does include terms that suggest exclusivity. For instance, the contract obligates Coyle "to furnish *all* labor, service, equipment, transportation, materials and supplies to provide subterranean termite control and related services on *assigned* proper-

ties by [HUD]." (emphasis added). While the contract states that Coyle will provide all labor and services for a given property, the clause does not require HUD to assign Coyle *all* properties in the region. Thus, this contract language falls short of the exclusivity language necessary for a requirements contract.

This court finds no reason to interpret this agreement as a requirements contract based on Coyle's affidavit evidence. Even assuming that these affidavits accurately reflect Coyle's beliefs, they cannot override or contradict the plain language of the contract, which does not require sufficient exclusivity for a requirements contract. *See Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir.1991). Moreover Coyle's affidavits do not reconcile Coyle's intent with the contrary intent of HUD. *Cf. Crown Laundry & Dry Cleaners, Inc. v. United States*, 29 Fed. Cl. 506, 518 (1993) (finding an implied requirements contract when testimony from *both* parties evinces a clear intent to form a requirements contract). This court therefore affirms the Board's determination that this agreement is not a requirements contract.

 This court next analyzes the merits of interpreting this agreement as an indefinite quantity contract. While many factors are relevant, including the absence of the FAR-mandated "indefinite quantity" clause, this court cannot read this agreement as an indefinite quantity contract because it lacks a minimum quantity term. Regardless of whether the contract is susceptible to interpretation as an indefinite quantity contract, a contract lacking this term cannot be construed as a valid indefinite quantity contract. *See Willard, Sutherland & Co. v. United States*, 262 U.S. 489, 493, 43 S.Ct. 592, 67 L.Ed. 1086 (1923) ("[If t]here is nothing in the writing which required the Government to take ... any ascertainable quantity[, i]t must be held that, for lack of consideration and mutuality, the contract was not enforceable [as an indefinite quantity contract]."). Thus, this court affirms the Board's determination that the contract cannot be an enforceable indefinite quantity contract.

This contract neither required HUD to order from Coyle termite services for *all* its properties nor contained a minimum quantity term. Thus, the contract is not enforceable as either a requirements contract or as an indefinite quantity contract. As such, Coyle is entitled to payment only for services actually ordered by HUD and provided by Coyle. *See Willard*, 262 U.S. at 494, 43 S.Ct. 592 ("By the conduct and performance of the parties, the contract was made definite and binding as to the [quantity] ordered and delivered according to its terms."). In other words, this court has reached the same conclusion as and affirms the Board's decision.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*