**SOCIOTECHNICAL RESEARCH APPLICATIONS, INC.,**
Appellant,

v.

**Christine Todd WHITMAN, Administrator, Environmental Protection Agency, Appellee.**

No. 01–1232.

United States Court of Appeals, Federal Circuit.

Jan. 30, 2002.

Before LOURIE, DYK, and PROST, Circuit Judges.

PROST, Circuit Judge.

Sociotechnical Research Applications, Inc. ("STRA") appeals the final order of the Board of Contract Appeals of the Department of the Interior ("Board") denying its motion for summary judgment and granting summary judgment in favor of the Environmental Protection Agency ("EPA" or "Government"). *See Appeals of Sociotechnical Research Applications, Inc.*, Nos. 3969–98, 3970–98, 2000 WL 1917910, slip op. (Interior B.C.A., Dec. 29, 2000). Because the Board correctly determined that EPA had no obligation to fully fund STRA's contract, but erroneously concluded that EPA was only required to reimburse STRA for its incurred costs rather than the entire amount allotted to the contract, we *affirm-in-part, reverse-in-part,* and *remand* for further proceedings in accordance with this opinion.

I.

In 1995, EPA issued a solicitation seeking assistance for its Indoor Air Division. STRA submitted a detailed proposal and was awarded the contract. The contract established a base period of performance running from September 1995 through

September 1996. It also provided for four overlapping option periods. The only option period at issue here, Option Period I, began July 1, 1996, and ended September 30, 1997.

Central to this appeal are two contract provisions: clause B.1(a) and the Limitation of Funds ("LOF") clause. Clause B.1(a) stated that "[t]he Government will order 33,800 direct labor hours for the base period which represents the Government's best estimate of the level of effort required to fulfill these requirements." The contract further provided that if EPA chose to exercise Option Period I, 52,000 direct labor hours ("dlh") would be added to the hours specified by B.1(a). Clause B.1(a) was modified by B.1(e), however, which stated that B.1(a) did not "supersede the requirements of either the 'Limitation of Cost' or 'Limitation of Funds' clauses."

The LOF clause addressed the funds actually allotted to STRA's contract. The LOF clause stated:

(b) The Schedule specifies the amount presently available for payment by the Government and allotted to this contract, the items covered, ... and the period of performance it is estimated the allotted amount will cover. The parties contemplate that the Government will allot additional funds incrementally to the contract up to the full estimated cost to the Government specified in the Schedule, exclusive of any fee. The Contractor agrees to perform, or have performed, work on the contract up to the point at which the total amount paid and payable by the Government under the contract approximates but does not exceed the total amount actually allotted by the Government to the contract.

LOF clause (f)(1) further provided that "the Government is not obligated to reimburse the contractor for costs incurred in excess of the total amount allotted by the Government to this contract. ..." Under LOF clause (f)(2), STRA was not obligated to "continue performance under this contract ... or otherwise incur costs in excess of (i) the amount then allotted to the contract by the Government ... until the [Contracting Officer] notifies the Contractor in writing that the amount allotted by the Government has been increased and specifies an increased amount. ..." LOF clause (h) emphasized that "the Government is not obligated to reimburse the Contractor for any costs in excess of the total amount allotted by the Government to this contract, whether incurred during the course of the contract or as a result of termination."

According to clause B.3, the estimated cost of the base period was $2,027,429, with a fixed fee of $146,786; the estimated cost of Option Period I was $3,132,991, with a fixed fee of $226,829. The contract set the base period's initial allotment at $19,200, which was "estimated to cover [STRA's] performance through 10/30/95."

EPA did not order the entire estimated dlh specified in B.1(a), nor did it fully fund the contract. In fact, it fell far short. At the end of the contract, EPA had only ordered 435 dlh for the base period and 5,874 dlh for Option Period I. These hours were valued at $545,648. All in all, the Government allotted $24,200 and $736,500 to the two respective periods, for a total allotment of $760,700. The entire estimated value for the periods was $5,534,035. The Government does not contest that, despite funding shortages, Congress made sufficient appropriations for EPA to fully fund STRA's contract. Both parties agree that the Government compensated STRA for all costs actually incurred.

In 1998, STRA submitted a claim to the Contracting Officer ("CO") alleging that EPA had breached its contract by failing

to order the "minimum guaranteed quantities of work" during the base year and Option Period I. The CO denied the claim, and STRA appealed to the Board. When the Board granted summary judgment in favor of EPA, STRA appealed to this court. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 607(g)(1)(A).

## II.

The Contract Disputes Act, 41 U.S.C. § 609(b) (1994) governs this court's review of the Board's decision. Section 609(b) provides:

> [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

Because contract construction is a question of law, this court reviews the issue de novo and without deference to the Board's decision. *See Coyle's Pest Control, Inc. v. Cuomo*, 154 F.3d 1302, 1304 (Fed.Cir. 1998). The court does, however, give "careful consideration" to the Board's interpretation "in light of its experience and expertise in construing government contracts." *See Triax Pac., Inc. v. West*, 130 F.3d 1469, 1473 (Fed.Cir.1998).

## III.

On appeal, STRA argues that clause B.1(a) committed EPA to ordering 33,800 dlh for the base period and 52,000 dlh for Option Period I. According to STRA, the Government was obligated to fully fund the contract, and it breached the agreement when it failed to order the estimated level of effort specified in B.1(a). In its defense, EPA makes two arguments. It initially asserts that the Government had no duty to either fully fund the contract or to order the entire estimated dlh because the LOF clause limited EPA's liability to those funds allotted to the contract. As it argues, "the Government was liable only to the extent that funds were actually allotted to the contract, and there were no guarantees that the contract would be fully funded." Elsewhere, however, the Government states that the contract obligated it to reimburse STRA only for those "direct and indirect costs *incurred*" (emphasis added). Because the record suggests that STRA's costs might have been less than the contract's allocation, the distinction between costs incurred and funds allotted is significant.

The Board adopted the Government's second argument. It determined that (1) EPA had no duty to fully fund STRA's contract despite the existence of adequate appropriations; and (2) the contract obligated the Government to reimburse STRA only for those allowable costs it incurred. We affirm the Board's first conclusion, reverse the second, and remand for further proceedings consistent with this opinion.

## A.

We find no error in the Board's determination that EPA was not required to fully fund STRA's contract. The plain language of the contract demonstrates that the Government owed Appellant no such obligation. Nowhere in the contract did EPA agree to pay STRA the entire estimated cost. On the contrary, the LOF clause explicitly limited the Government's liability to the funds allotted. LOF clause (f)(1) informed STRA that "the Government is not obligated to reimburse the contractor for costs incurred in excess of the total amount allotted by the Government to this contract...." LOF clause

(h) further emphasized that "the Government is not obligated to reimburse the contractor for any costs in excess of the total amount allotted by the Government to this contract, whether incurred during the course of the contract or as a result of termination." While LOF clause (b) acknowledged that "[t]he parties contemplate that the Government will allot additional funds incrementally to the contract up to the full estimated cost," simple "contemplation" does not rise to the level of contractual commitment, particularly in the face of provisions to the contrary.[1]

### B.

■ Although EPA had no obligation to fully fund STRA's contract, sections B.1(a), B.1(e), and the LOF clause together did require EPA to pay STRA the funds actually allotted to the contract. To the extent that the Board held otherwise when it found that the Government was only required to compensate STRA for its incurred costs, we reverse.

Clause B.1(a) provides that "[t]he Government will order 33,800 direct labor hours for the base period...." Contrary to STRA's argument, however, the contract did not render EPA liable for B.1(a)'s entire estimated dlh. Put another way, B.1(a) did the scope of not define EPA's liability under the contract. Rather, as provided in Clause B.1(e), B.1(a)'s "terms and conditions do not supersede the requirements of either the 'Limitation of Cost' or the 'Limitation of Funds' clauses." As discussed above, the LOF clause explicitly limited the Government's liability to those funds allotted to the contract.

When construing a contract, the court must consider the contract as a whole and interpret it, if possible, to give reasonable meaning to all of its provisions. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991). If the contract's language is unambiguous, the court's inquiry is at an end, and the plain language is controlling. *Craft Mach. Works, Inc. v. United States*, 926 F.2d 1110, 1113 (Fed.Cir.1991). While STRA's contract is not a model of clarity, the language of B.1 and the LOF clause is relatively straightforward. Reading B.1(a), B.1(e), and the LOF clause together, EPA promised to order 33,800 and 52,000 dlh from STRA but subsequently limited its liability to the contract's allotment.

The Government argues precisely this interpretation of the contract in its brief. It states that "EPA was only obligated to the extent that it had allotted funds to the contract," and urges this court to find that "EPA was liable only to the extent that funds were made available to the contracting officer and those funds were allotted to the contract." Although the Government later asserts that it was only obligated to pay "the direct and indirect costs *incurred* under the contract" (emphasis added), EPA cannot escape the plain meaning of the contract read as a whole. The LOF clause limited the Government's liability for B.1(a)'s unambiguous promise to order the entire estimated dlh. While EPA is not liable for this dlh, it is liable for the funds that it allotted to the contract. The total amount of allotted funds was $760,700. But EPA ordered only $545,648

---

1. The solicitation's Availability of Funds clause, section L.25, further undermines STRA's argument that EPA was obligated to fully fund its contract. The Availability of Funds clause notified STRA that "[n]o legal liability on the part of the Government for any payment may arise until funds are made available to the Contracting Officer for this contract and until the Contractor receives notice of such, to be availability confirmed in writing by the Contracting Officer." Like the LOF clause, section L.25 notified STRA that clause B.1(a) did not define the extent of EPA's liability under the contract.

worth of dlh (including fees). EPA therefore appears to be liable for $215,052, the difference between the amount actually allotted and the value of the dlh actually ordered.

For the foregoing reasons, the Board's decision is affirmed in part, reversed in part and remanded.

### COSTS

No costs.

*Affirmed–in–Part, Reversed–in–Part, and Remanded*