# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Patriot Pride Jewelry, LLC | ) ASBCA No. 58953 |
| | ) |
| Under Contract No. 11-PS-006 | ) |

APPEARANCE FOR THE APPELLANT: John J. Hoke, Esq.
Smith Hoke, PLLC
Albany, NY

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
CPT Evan C. Williams, JA
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE PEACOCK
## PURSUANT TO RULE 12.3

This timely appeal involves a dispute concerning a retail agreement executed by Patriot Pride Jewelry, LLC ("Patriot Pride" or "appellant") and the Army & Air Force Exchange Service ("AAFES" or "government"). Appellant has elected to have the appeal processed pursuant to the Board's accelerated procedures prescribed in Rule 12.3 and the parties have submitted the appeal for decision on the record under Rule 11. We deny the appeal.

## FINDINGS OF FACT

### The Agreement

1. On 25 October 2011, Patriot Pride and the AAFES entered into AAFES Retail Agreement No. 11-PS-006 (the "Agreement") which contained standard terms and conditions that would apply to future transactions between AAFES (as retailer) and Patriot Pride (as vendor) (R4, tab 1 at 1).

2. AAFES is a non-appropriated funds instrumentality (NAFI) of the United States Government for which the Federal Acquisition Regulation (FAR) does not apply (R4, tab 1 at 4). Ms. Pamela Thompson is employed by AAFES as a merchandise manager (supp. R4, tab 2 at 2).

3. The agreement stated that it would become effective on 25 October 2011 and end 24 October 2018, unless sooner terminated with an estimated value of $50,000 (R4, tab 1 at 1).

4. Under the heading "VENDOR TERMS – Negotiable Payment Terms," the agreement expressly provided there to be no minimum quantity with respect to individual purchase orders (R4, tab 1 at 1). No other provision of the agreement required the government to order any minimum quantity during the duration of the contract.

5. Also under the heading "VENDOR TERMS – Negotiable Payment Terms," Patriot Pride inserted as one of its "vendor terms" that it required a "lead time" of "5 days after receipt of order" or the ship date on the purchase order to deliver the costume jewelry (R4, tab 1 at 1). The agreement also stated, "Vendor agrees to receive orders and send advanced ship notices (ASNs) and invoices via EDI unless specifically waived by AAFES" (*id.*).

6. The agreement contained the following provision under the heading **"TERMINATION BY NOTICE"**:

> Either party may terminate any and all performance under an individual purchase order, provided such notice is given not less than ten (10) calendar days before performance is required. Notice must be given in writing, to include electronic mail.

(R4, tab 1 at 4)

7. The Agreement's **"DISPUTES"** clause stated in relevant part:

> a. Each contract resulting from, or referencing, this agreement is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Except as provided in the ACT, all disputes arising under or relating to this contract shall be resolved under this clause.
>
> ....
>
> f. The contracting officer will mail, or otherwise furnish, a written decision in response to a contractor claim within the time periods specified by law. Such decision will be final and conclusive unless:

(1) Within 90 calendar days from the date of contractor's receipt of the final decision, the contractor appeals the decision to the Armed Services Board of Contract Appeals (ASBCA)....

(R4, tab 1 at 4-5)

8. The Agreement also contained the following clause:

**AAFES/VENDOR PARTNERSHIP MARKETING PROGRAM (JUL 94).** The AAFES Marketing Program consists of numerous elements to enhance the sale of consumer products and services. At the Contractor's request, AAFES will give the Contractor the opportunity to participate in selected elements of the program. All participation will be in conjunction with the sale of authorized products and services to authorized customers. AAFES reserves the right to limit the degree of participation based on availability, designated themes of special events, and the overall goals of the program.

(R4, tab 1 at 21)

9. The agreement also included, by reference, various sections of the AAFES Supplier Requirements – Agreement 03-01 ("Supplier Requirements") (R4, tab 1 at 8). Of particular relevance to this appeal, the following sections were specifically identified:

Section 1A – Paragraphs
Section 8 – Fine Jewelry
Section 10 – Exchange Mail Order Catalog/Internet
Section 11 – Retail Merchandise

(R4, tab 1 at 2)

10. Specifically, Section 10 of the Supplier Requirements included terms regarding how delivery orders were to be placed, shipping/packing instructions, invoicing and returns (R4, tab 1 at 55-56).

11. Also on 25 October 2011, the parties executed an AAFES Business Terms Agreement ("Business Terms Agreement") in reference to the Agreement (R4, tab 2 at 1). The Business Terms Agreement obligated Patriot Pride to pay AAFES a 3% fee on

any sales made as a result of "Co-op Advertising" (*id.*). This 3% was to be paid annually if AAFES advertised Patriot Pride's merchandise (*id*).

12. Under the agreement, an authorized patron could purchase an item of costume jewelry from AAFES using its online catalog – this purchase would then trigger the issuance of the purchase order by AAFES to Patriot Pride for that same item (R4, tab 4 at 2; supp. R4, tab 2 at 4).

13. In October 2011, AAFES elected to advertise Patriot Pride's costume jewelry in its online catalog (R4, tab 8). AAFES advertised the costume jewelry as AAFES products with online purchasers to place orders with and make payment to AAFES (supp. R4, tab 2 at 4).

14. Between 12 May 2011 and 18 January 2013, AAFES sold 182 items of Patriot Pride's costume jewelry to authorized patrons. AAFES sold the 182 units to its customers for $8,529. (R4, tab 6)

15. During a review of its online catalog, AAFES determined that it was no longer in its business interest to advertise Patriot Pride's costume jewelry considering unit sales and profitability (supp. R4, tab 2 at 5, tab 3). Although profitability standards were not included in the agreement, these standards were determined by AAFES business practices and decisions (supp. R4, tab 2 at 5).

16. On 25 February 2013, Ms. Thompson notified Patriot Pride, via telephone, that its products would no longer be listed online (supp. R4, tab 2 at 5-6). However, AAFES did not terminate the agreement.

17. Under the agreement, AAFES can still place orders with Patriot Pride for costume jewelry (supp. R4, tab 2 at 5). Specifically, AAFES may decide in its business judgment to advertise Patriot Pride's costume jewelry again, potentially leading to additional purchase orders (*id.*). Also, an authorized patron wishing to order an item of costume jewelry from the Patriot Pride assortment no longer online could contact the AAFES customer service team who could place a special order (*id.*).

18. On 17 May 2013, Patriot Pride submitted a claim to AAFES for $41,071.43 the "remaining value of the contract" (R4, tab 7).

19. On 11 July 2013, Ms. Thompson sent a letter to Patriot Pride denying its claim. In the letter, Ms. Thompson explained:

> The AAFES Retail Agreement is simply [an] agreement to do business, not a contract. It outlines what is required to do business.

4

> Patriot Pride alone made the decision to purchase inventory before actual purchase orders were placed. AAFES is not responsible for the $41,071.43 requested.

(R4, tab 8)

20. Appellant timely appealed the denial of its claim by letter to the Board dated 8 October 2013.

21. The agreement has not been terminated and remains in effect until its expiration date of 24 October 2018 (R4, tab 1 at 1).

## DECISION

Appellant contends that AAFES had an obligation to advertise its products in the AAFES online catalog, apparently for the entire seven-year term of the Agreement. The government argues that we lack jurisdiction to resolve the claim. Assuming *arguendo* that the Board has jurisdiction, the government maintains that nothing in the Agreement requires AAFES to continue to advertise appellant's products and that, in any event, Patriot Pride has failed to prove that it suffered damages as a consequence of the alleged breach.

## Jurisdiction

The government contends that the Board's jurisdiction is dependent on whether the Agreement qualifies as a CDA "procurement" contract. *See Coastal Corp. v. United States,* 713 F.2d 728 (Fed. Cir. 1983). It notes that because the AAFES is a NAFI described in 28 U.S.C. § 1491(a)(1) (2000), CDA jurisdiction would normally extend to its contracts as prescribed in 41 U.S.C. § 7102(a)(1)-(2). However, the Agreement here is not one of the types of "procurement" contracts identified in the statute to which the Board's CDA jurisdiction extends, according to the government. We agree.

Pursuant to the agreement, authorized AAFES patrons can purchase costume jewelry items, among other ways, using the AAFES online catalog, triggering the issuance of a purchase order under the Agreement by AAFES to appellant for the jewelry item to be shipped directly by Patriot Pride to the patron. In essence, AAFES merely acts as a retailer/middleman facilitating transactions between appellant and third-party buyers. AAFES does not purchase, or even receive the goods, in fulfilling its intermediary function. No traditional "buyer-seller" relationship exists between AAFES and appellant through which goods or services are transferred to the government. *Cf. Rick's Mushroom Service, Inc. v. United States,* 521 F.3d 1338, 1344 (Fed. Cir. 2008). The principal purpose of the Agreement is not to acquire property or services. Consequently, there is

5

no acquisition by AAFES of property or services within the meaning and coverage of the CDA. *See also New Era Construction v. United States*, 890 F.2d 1152, 1157-58 (Fed. Cir. 1989) (construction financing arrangement between Department of Housing and Urban Development and nonfederal agency not a CDA contract because no acquisition for the direct benefit or use of the federal government); *Florida Power & Light Co. v. United States*, 307 F.3d 1364, 1371-74 (Fed. Cir. 2002) (contracts for the furnishing by the government of uranium enrichment services to utilities were not covered by the CDA).

The fact that the Agreement itself provided that orders issued pursuant to the contract were "subject to" the CDA is not controlling. It is well settled that contractual language cannot confer jurisdiction not authorized by the statute. *Florida Power & Light*, 307 F.3d at 1370-71 (and cases cited); *DRC, Inc.*, ASBCA No. 54206, 04-2 BCA ¶ 32,652 at 161,612 (USAID merely acted as a financier in connection with an underlying construction contract; no intent to procure goods or services and no "buyer and seller" relationship). Accordingly, to the extent jurisdiction exist, it is not derived from the CDA.

Nevertheless, we consider that the Disputes clause in the Agreement provides an independent basis for jurisdiction. Although it inaccurately references the CDA, the clause unequivocally grants the Board authority to "all disputes arising under or relating to" the Agreement without limitation. By virtue of the parties' consensual agreement reflected in the clause, we have jurisdiction to decide the dispute. *Cf. G.E. Boggs & Associates, Inc.*, ASBCA No. 34841 *et al.*, 91-1 BCA ¶ 23,515 at 117,906 (and cases cited) (parties could not confer CDA jurisdiction by consent under non-procurement contract to mitigate effects of legislation on certain impacted AID contracts; Board assumed jurisdiction under non-CDA Disputes clause), *transferred, G.E. Boggs & Associates v. Roskens*, 969 F.2d 1023 (Fed. Cir. 1992) (affirmed Board's conclusion that CDA not applicable to contracts; accordingly, case transferred to then Claims Court pursuant to 28 U.S.C. § 1631 (1988)); *see also GAP Instrument Corp.*, ASBCA No. 51658, 01-1 BCA ¶ 31,358 at 154,865 (although CDA jurisdiction likely present, Board noted that it could alternatively assume jurisdiction under Disputes clause even if license agreement was a nonprocurement contract).

We note in this case that the Agreement does not lend itself to straightforward categorization. However, we consider it most similar to a basic agreement or basic ordering agreement and that well-established rules associated with such contracts and indefinite quantity contracts generally are germane in discussing the nature of the parties' rights and duties relating to the Agreement. Most importantly, the Agreement contains no guaranteed minimum quantity that the government must order or the appellant must supply. Only an estimated dollar amount ($50,000) for the total seven year term of the Agreement is prescribed. The Agreement itself simply sets forth a framework and terms for future orders of indefinite quantity that may be issued. Until such orders are issued, the parties'

6

obligations are illusory and unenforceable and no contract is formed for lack of mutuality and consideration. *See, e.g., Willard, Sutherland & Co. v. United States*, 262 U.S. 489, 493 (1923); *Crewzers Fire Crew Transport, Inc. v. United States*, 741 F.3d 1380 (Fed. Cir. 2014); *Coyle's Pest Control, Inc. v. Cuomo*, 154 F.3d 1302, 1306 (Fed. Cir. 1998); *Modern Systems Technology Corp. v. United States*, 979 F.2d 200, 202-04 (Fed. Cir. 1992); *Mason v. United States*, 615 F.2d 1343, 1346 n.5 (Ct. Cl. 1980), *cert. denied*, 449 U.S. 830 (1980); *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1062 (Fed. Cir. 2002); *Apex International Management Services, Inc.*, ASBCA No. 38087 *et al.*, 94-2 BCA ¶ 26,842 at 133,550, *aff'd on recon.*, 94-2 BCA ¶ 26,852; *Julian Freeman*, ASBCA No. 46675, 94-3 BCA ¶ 27,280 at 135,906.

In this case the Agreement has been partially performed through issuance of 182 orders by AAFES for appellant's jewelry. Accordingly, even if the Agreement was unenforceable *ab initio*, it became valid and enforceable to the extent of that performance. *See, e.g., Willard, Sutherland & Co.*, 262 U.S. at 493; *Foreman Industries*, ASBCA No. 25674, 83-2 BCA ¶ 16,828 at 83,719. On the other hand, Patriot Pride generally would be entitled to compensation only for the goods actually ordered by AAFES and supplied by appellant. *See, e.g., Coyle's Pest Control, Inc.*, 154 F.3d at 1306. Mere partial performance does not make the Agreement binding and enforceable to the extent that it is executory. *Cf., e.g., A.C. Ball Co.*, ASBCA No. 19375, 75-1 BCA ¶ 11,298 at 53,863. We consider that in light of the partial performance of the Agreement, the dispute and claim regarding the parties' advertising rights and obligations should be viewed as falling within our jurisdiction. The gravamen of the claim impacts both the partially performed and executory portions of the contract.

## The Merits

Appellant's claim in this case is that the government breached the Agreement because it opted to discontinue advertising appellant's products in its online catalog. The claim is without merit. There is no provision in the contract that requires the government to advertise appellant's products. The sole obligations of the parties with respect to online advertising requires appellant to compensate the government 3% of the order amount only if an order is placed as a result of inclusion and advertising of appellant's jewelry in the catalog.[1] Otherwise, the agreement affords the government considerable discretion with respect to advertising options based on its business judgment. It is unreasonable to interpret the 3% payment percentage inserted by appellant in the BTA for actual orders as a commitment by AAFES to advertise appellant's products online for seven years regardless of AAFES's best business judgment and the marketability and

---

[1] Whether the 3% compensation due the government for orders placed via the online catalog is negotiable and whether the parties' have considered a higher percentage in order to induce the government to readvertise the items in the catalog is uncertain.

profitability of the jewelry. Given this discretion, and the unenforceability of the agreement generally until orders are placed, we consider that the government interpretation is the only reasonable interpretation of the Agreement when read as a whole.

We also note that there is no requirement that appellant sell its products exclusively through AAFES or solely via AAFES online catalog orders. Finally, appellant could elect under the Termination by Notice clause to terminate "any and all performance" of orders issued pursuant to the Agreement.[2] This provision permitted the appellant to opt out of any order it was unable or unwilling to perform.

The appeal is denied.[3]

Dated: 9 June 2014

ROBERT T. PEACOCK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[2] Although appellant inserted as one of its "vendor terms" that it required a "lead time" of "5 days after receipt of order," we do not consider that it thereby negated its right to terminate orders under this clause with ten days notice. Reading the contract reasonably as a whole and giving meaning to all its provisions, appellant's self imposition of a five-day lead time presumes that it elects to accept rather than terminate an order.

[3] The scope of this appeal encompasses all issues regarding both entitlement and quantum. In light of our conclusions herein, we need not reach issues regarding the adequacy and persuasiveness of appellant's evidence of its alleged damages.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58953, Appeal of Patriot Pride Jewelry, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals